## FAIRFIELD SAVINGS BANK, In Equity,

*vs.*

## LUMBER SMALL AND HOWARD W. DODGE, Executor.

Kennebec.    Opinion September 15, 1897.

*Equity.    Interpleader.    Evidence.    Savings Bank Deposit.    Gift.    Delivery.
R. S., c. 47, § 99; c. 82, § § 93, 98.*

A savings bank brought a bill in equity asking that the husband, on the one side, and the executor of the will of his deceased wife, on the other side, be required to interplead respecting the ownership of a deposit standing on the books of the bank in the name of the wife. Both contending parties filed their respective answers, each claiming the deposit as his own.

*Held;* that the existence of all the essential conditions upon which the equitable remedy of interpleader depends having been satisfactorily established, the bill was properly sustained and a decree of interpleader duly entered.

By agreement of the parties, the answers filed were to be taken as the pleadings of the contending parties.

*Held;* that at the time of the trial, the real contestants for the funds were the husband, on the one side, and the executor, on the other; and that thereafter the original plaintiff, the savings bank, occupies the position of a mere stakeholder, neither having nor claiming any interest in the subject matter. The remedy of the bank is exhausted by the decree that the claimants do interplead with each other, and it is then "wholly without the controversy."

*Held;* that the husband is not a competent witness under the statute, (R. S., c. 82, § 93) and that his deposition cannot be considered in determining the question of the ownership of the fund, pending between himself and his wife's executor.

When it appears that the evidence fails to disclose any indication, aside from the fact of the deposit itself standing in the name of the wife, on the part of the husband to make an absolute gift of the money so deposited with his wife, but on the contrary, the inference is irresistible from the subsequent conduct and declaration of the parties, that it was mutually understood by them to be his money, and subject to his control the same as other money deposited in his own name, *held;* that the deposit is the property of the husband.

*Also;* the fact that the wife prior to her death had access to the receptacle in which her husband's papers were kept, and took the book into her personal custody without his knowledge, does not constitute a delivery of the deposit book to the wife.

*Held;* that, in this case, there is an absence of proof of both the intent to give and of any delivery to complete a gift,

ON REPORT.

This was a bill of interpleader, brought by the Fairfield Savings Bank against the defendants, to determine the ownership of a deposit in that bank. Both defendants claimed the fund and after a decree, requiring the defendants to interplead, was made in the court below, the case was reported to this court to be heard on bill and answers of the defendants and the testimony.

The deposition of one of the defendants, Lumber Small, was offered in evidence below, and was objected to as inadmissible under the statute. The parties agreed that the question of its admissibility should be determined by the law court.

The case is stated in the opinion.

*Edmund F. and Appleton Webb*, for defendant Small.

*S. S. and F. E. Brown*, for defendant Dodge.

SITTING: PETERS, C. J., EMERY, FOSTER, WHITEHOUSE, STROUT, SAVAGE, JJ.

WHITEHOUSE, J. The Fairfield Savings Bank brings this bill in equity asking that Lumber Small, on the one side, and Howard W. Dodge, executor of the will of Olive C. Small, the deceased wife of Lumber Small, on the other side, be required to interplead respecting the ownership of a deposit of $786.76 standing on the books of the bank in the name of Olive C. Small.

It is alleged in the bill that at the time of the decease of Olive C. Small, on the fifteenth day of May, 1896, she had in her possession deposit book No. 2384, issued by the plaintiff bank, showing an account of deposits and withdrawals, kept in her name from 1887 to 1895, with a balance of $786.76 in favor of the depositor; and that this money was claimed by Lumber Small, the surviving husband of Olive C., as his property, on the ground that it was his money when deposited in the bank; and that it was only placed in the name of his wife in trust for himself, for the reason that he already had deposits in the same bank in his own name to the full limit of $2,000 allowed by law.

Thereupon the contending parties filed their respective answers,

Lumber Small claiming the deposit as his own in accordance with, the representations in the bill, and Howard W. Dodge claiming it as a part of the estate of Olive C. Small.

The existence of all the essential conditions, upon which the equitable remedy of interpleader depends, having been satisfactorily established, the bill was properly sustained and a decree of interpleader duly entered. By agreement the answers filed were to be taken as the pleadings of the contending parties. Upon these pleadings, which duly presented the issue between the contending parties, the evidence was taken by the presiding justice and reported for the consideration of this court. The cause is now ripe for a decision upon the merits of the controversy between Lumber Small and the representatives of the estate of his wife, Olive C. Small, upon so much of the evidence as shall be deemed legally admissible. *Farley* v. *Blood*, 30 N. H. 354; *Atkinson* v. *Manks*, 1 Cowen, 691; *Savings Bank* v. *Fogg*, 83 Maine, 374.

In support of his contention the deposition of Lumber Small, who was ninety-two years of age, and unable to attend court, was offered in evidence, and excluded; but by consent of counsel it was subsequently made a part of the report, to be considered if held admissible by this court.

It is the opinion of the court that Lumber Small was not a competent witness under our statutes, and that his deposition cannot be considered in the determination of the question pending between himself and the representative of his wife's estate. Section 93 of chap. 82, R. S., providing that no person shall be excluded from testifying by reason of his interest in the result of the suit, is expressly declared by section 98 of that chapter to be inapplicable to cases "where, at the time of taking testimony, or at the time of trial, the party prosecuting, or the party defending, or any one of them, is an executor or an administrator," etc. It has been seen that, at the time of the trial, the real contestants for the fund in this case are Lumber Small, on the one side, and the executor of the will of Olive C. Small, on the other. This is the obvious and necessary result of the operations of a bill of interpleader. One of the principal elements involved in the remedy is

that the original plaintiff must occupy the position of a mere stake-holder, neither having nor claiming any interest in the subject matter. He must be entirely indifferent between the conflicting claimants, and be ready and willing to pay the money in dispute to the one found to be rightfully entitled. With the result of their dispute he has no concern. His remedy is exhausted by the decree that the claimants do interplead with each other, and he is then "wholly without the controversy." 3 Pom. Eq. § § 1320–1325, and cases cited.

But it is contended that the substance of the testimony which Lumber Small might be expected to give in support of his claim, as stated in the interpleading bill and in his answer, fully appears in the direct testimony of other witnesses and in the inferences to be drawn from the circumstances disclosed.

Lumber Small has had three wives, all of whom are deceased. By the first wife he has six children now living, but no children by either the second or third wife. It appears from the evidence that Olive C. Small, the third wife, had no property of her own at the time of her marriage with Lumber Small, and never afterwards acquired any in her own right. In November, 1891, Mr. Small made provision for the support of himself and wife, Olive C., by conveying to her brother, Geo. F. Rowe, a farm with other property in Benton, of the estimated value of $1200 or $1500 in the aggregate, and taking from Rowe a bond secured by a mortgage of the same property, for the maintenance of himself and wife during their lives. Under this arrangement Mr. and Mrs. Small both lived in the family of her brother until November 28, 1895, when Mr. Small became dissatisfied and went to live with his daughter, Mrs. Parkman, in Unity. Mrs. Small remained in her brother's family and received her support there until her death.

It appears from the copies of the accounts on the books of the Fairfield Savings Bank and from the deposit books in the case, that Lumber Small commenced to make deposits in that bank in his own name December 3, 1873, first receiving deposit book No. 459, and has kept an account there from that time to the present. In January, 1886, the amount of his deposits was $1980.86, and,

with the dividend added, on the first day of May following, $2020.87. It was in this state of his account that on January 6th a deposit of $200 was made on a separate account, evidenced by deposit book No. 2098, with the caption "Olive C. Small in account with the Fairfield Savings Bank." On this account three other deposits were made within six months following, aggregating, with the dividend, $411.06, which was all withdrawn on November 5 of the same year, and that account closed. On the same day he closed the account standing in his own name on book 459, by withdrawing the entire balance of $1908.27, and opened a new account in his own name by depositing $1319.33, receiving deposit book No. 2236.

But November 1, 1887, this account again reached a total of deposits and dividends of $1960.88, and on October 6, while this account was thus near the maximum limit for any one depositor, he again opened an account in the name of Olive C. Small, and deposited $300 on that account as shown by deposit book No. 2384, which is the one here in question. The amount of this account was increased by two other large deposits, to $2,000 May, 1886, and reduced by subsequent withdrawals to $786.76, the amount now in controversy. In the mean time the account in his own name, under the effect of numerous deposits and withdrawals, fluctuated between $2,000 in May 1888, and $1881 in June 1895, when there was a withdrawal of $800.

It appears from the testimony of Charles Rowell, who was treasurer of the bank from August, 1887, to 1894, comprising the entire period of the deposits and withdrawals on the account in question, that he issued this deposit book in the name of Olive C. Small and delivered it to her husband; that Lumber Small afterwards brought the book to the bank, and made all the deposits and withdrawals on that account; that he had no acquaintance with Olive C. Small, and that all the business was done with her husband. Her signature does not appear upon the books of the bank.

Mr. Pratt, Rowell's predecessor as treasurer of the bank, died before this controversy arose.

From this evidence alone it is not difficult to discover the rela-
tion of cause and effect between the fact that the account in his
own name equaled or exceeded the limit of $2,000, at the dates
above named, and the opening of a new account in the name of
his wife at the corresponding periods. It is true, that the statute
(R. S., c. 47, § 99,) provides that savings banks shall not receive
from any one depositor, directly or indirectly, over $2,000, and
that "no interest shall be paid to any one depositor for any
amount of deposit exceeding said sum." But it is established
beyond question by all the evidence that every deposit made in
the name of Olive C. Small was the money of Lumber Small at
the time it was deposited; and whatever effect any such evasion of
the law respecting the limit of the individual deposit might have
upon his right to recover either principal or interest from the
bank, it cannot of itself operate to confer any title upon Olive C.
Small. Her right to the deposit must depend upon proof of an
intent on the part of Lumber Small to make an absolute gift of
the money to her, and of the delivery requisite to effectuate such
intent. *Brabrook* v. *Savings Bank*, 104 Mass. 228; *Parkman* v.
*Savings Bank*, 151 Mass. 218; *Savings Bank* v. *Fogg*, 83 Maine,
374. It is a matter of common knowledge that when a depositor's
account in his own name has reached the maximum limit allowed
by law, he often opens a new account in the name of some other
member of his family, but in fact for his own benefit; and in such
a case evidence that he had thus deposited the full amount allowed
in his own name "is admissible as offering a possible explanation
of the form adopted other than the intention to make a gift."
*Parkman* v. *Savings Bank*, 151 Mass. supra.

In the case at bar, careful examination of all the evidence, aside
from the fact of the deposit, fails to disclose any indication what-
ever of a purpose on the part of Lumber Small to make an abso-
lute gift of this money to his wife; but, on the contrary, the infer-
ence is irresistible from the conduct and declarations of both
parties, for more than seven years after the deposit was made, that
it was mutually understood by them to be his money, subject to
his management and control to the same extent as the money
deposited in his own name.

It does not appear from the testimony of treasurer Rowell that any declaration of a gift to the wife was made at the time of the deposit, but it affirmatively appears that Lumber Small continued to have possession of the deposit book in question and to exercise dominion and control over the account, personally making all the deposits and withdrawals precisely the same as he did respecting the accounts and deposit books standing in his own name.

G. F. Tarbell, a disinterested witness, states that in May, 1895, at the request of Mr. Small, he prepared a draft of a will to be executed by him; that he was present when it was shown to Mrs. Small, and that she objected to it because it contained no provision in her favor, saying that all she wanted was a maintenance out of the property, but she had no property whatever, and if her brother, Mr. Rowe, should give up the farm and leave her, she would have nothing but the place. No reference was made by either of them to the money deposited in her name. His only reply was that he considered the arrangement made with Mr. Rowe sufficient for her support; but he consented to have a provision inserted in the will that a certain amount of personal property should be held by the executor of the will in trust for her support if required, and with that she then seemed satisfied.

But her subsequent helplessness from rheumatism appears to have been the occasion for renewed anxiety in regard to her means of support, and thereupon, apparently without the knowledge of her husband, she removed the bank book in question from the trunk or basket in which it had been kept, and thereafter held it in her own custody.

Martha A. Parkman, the daughter of Lumber Small, testifies that she had a conversation with her step-mother, Mrs. Small, a short time before she died, in relation to the bank book, as follows: "I told her there seemed to be a bank book that father was very much worried over. I asked if she would tell me about it so I would understand it. She said she would. She said father put some money into the savings bank and took out a book in her name. . . . . He wanted the book one day—called for it. She told him she could keep it just as well,—it would be just

as safe with her as it would with him.    Now, she says, I will
tell you why I kept it—because these people (meaning George
Rowe, and his wife, with whom she was then living), never had
anything of their own in the world until they came there . . . .
and they are liable to get through, make way with what he has
earned.    And she says if your father should die before I do, what
would become of me; and if I die before he does, there is his book
. . he will find it just as he left it."    In this interview there was
no suggestion on the part of Mrs. Small that she ever understood
that the deposit was made or intended as a gift to her, and her
excuse for holding it in her custody was not placed upon that
ground.    It is true that Mrs. Parkman, as an heir of Lumber
Small, is interested in the result of this suit; but equally signifi-
cant if not more important testimony upon this feature of the case
is given by Mrs. Rowe, the wife of Geo. Rowe, with whom Mrs.
Small was living.    She was called as a witness by the other side,
and on cross-examination testified as follows on this point:

" What did Mr. Small leave for?    I don't know what he left
for.    I think he got mad because she wouldn't let him have the
book—all I know about he left for.    He wanted to lend some
money, and she wouldn't let him have the book to keep it.    And
she said :    You have made your will and you have left nothing for
me, and says :    I don't know what might happen to George and
his family, and I think I will keep it myself." . . .

" What did he say?

" He said he wanted the book, and if she didn't give it up in
such a time he would send somebody after it.    . . . .    That was
when he left, November 28, 1895.

" And he claimed the money to be his and she claimed she
would hold the book and make the most of it?    Yes sir.

" What did she do with it?

" I took care of it—put it away for her."

After this colloquy and after her husband went to live with his
daughter, it is true that Geo. F. Rowe, claiming to be acting for
Mrs. Small, made an ineffectual attempt to draw money from the
bank on this account, and about a month before her death, Mrs.

Small appears to have signed a will bequeathing this money to her brothers and sisters; but from all the evidence it is impossible to resist the conclusion that this deposit was never intended as an absolute gift to Olive C. Small.

Again, " to constitute a valid gift inter vivos the giver must part with all present and future dominion over the property given. He cannot give it and at the same time retain the ownership of it. There must be a delivery to the donee. . . . . There must be an intention to give, and this must be carried into effect by an actual delivery." *Robinson* v. *Ring*, 72 Maine, 140. See also *Northrop* v. *Hale*, 73 Maine, 66; *Savings Bank* v. *Merriam*, 88 Maine, 146.

In this case there is no evidence that Lumber Small ever delivered this deposit book to his wife to be retained as her property. The fact that she had access to the receptacle in which his papers were kept, and took the book into her personal custody without his knowledge, does not constitute such delivery. No act is shown to have been done by him for the purpose of passing the title to her. There is an absence of proof of both the intent to give and of any delivery to complete the gift.

It is, therefore, the opinion of the court that the deposit in question is the property of Lumber Small.

*Decree accordingly.*