66    APPELLATE COURT OF INDIANA,

Michigan Cent. R. Co. *v.* Hammond, etc., Elec. R. Co.—42 Ind. App. 66.

## MICHIGAN CENTRAL RAILROAD COMPANY ET AL. *v.* HAMMOND, WHITING & EAST CHICAGO ELECTRIC RAILWAY COMPANY.

[No. 5,937. Filed February 7, 1908. Rehearing denied March 17, 1908. Transfer denied June 5, 1908.]

1. STREET-RAILROADS.—*What Constitute.*—A company formed under the street-railway laws, using electric power, operating upon the streets of several contiguous municipalities, with only small parts of its line outside of corporation limits, having the right to transport the United States mail, stopping its cars at street crossings and other convenient places, maintaining tracks on a level with the streets, charging five-cent fares, and issuing transfers, is a street railway company. p. 68.

2. EMINENT DOMAIN.—*Additional Servitude.*—*Street-Railroads.*— Street-railroads do not constitute an additional servitude upon the lands used for street purposes. p. 70.

3. STREET-RAILROADS.—*Railroad Crossings.*—*On Streets or Highways.*—*Interlocking Devices.*—The act of 1897 (Acts 1897, p. 237, §§5227-5234 Burns 1908), entitled "an act on the subject of, and relating to railroad crossings," does not apply to an electric street-railroad in crossing steam railroads on the streets or highways. pp. 70, 75.

4. EVIDENCE.—*Judicial Knowledge.*—*Steam and Electric Railway Crossings.*—*Interlocking Devices.*—Courts take judicial knowledge that in 1897 street-railroads operated by electricity had been constructed across the tracks of steam railroads at street crossings in many cities, and that interlocking systems constructed in the streets would be obstructions thereto. p. 72.

5. RAILROADS.—*Rights of Way.*—*Dedication of, for Streets.*—*Municipal Corporations.*—Where a railroad company's right of way was intersected by a platted street of a city, and the city built such street on both sides up to such right of way, the railroad company completing the street across such way for public use, the acceptance thereof by the public constitutes a dedication which cannot be revoked by such company. p. 76.

6. SAME.—*Rights of Way.*—*Title.*—*Dedication of, for Streets.*—A railroad company's dedication, by conduct, of its right of way for street purposes, estops such company from objecting to any proper use of the streets thereafter. p. 77.

7. SAME.—*Rights of Way.*—*Dedication for Streets.*—*Street-Railroads.*—*Crossings.*—Where a steam railroad company dedicates,

for street purposes, a way across its right of way, it impliedly assents to the right of a street-railroad company to cross its tracks and to do the things ordinarily incident thereto.  p. 77.

From Porter Circuit Court; *Charles H. Truesdell,* Judge.

Suit by the Hammond, Whiting & East Chicago Electric Railway Company against the Michigan Central Railroad Company and others.  From a decree for plaintiff, defendants appeal.  *Affirmed.*

*Winston, Payne, Strawn & Shaw* and *John B. Peterson,* for appellants.

*Crumpacker & Moran,* for appellee.

HADLEY, P. J.—This is a suit brought by appellee against appellants, in the Lake Circuit Court, whereby appellee sought to restrain appellants from preventing appellee from crossing the tracks of appellants at grade on Calumet avenue in the city of Hammond.  A preliminary restraining order was issued, and under its protection the crossing was laid.  The pleadings consist of the complaint filed by appellee, to which appellants separately demurred, which demurrers were overruled, separate answers of appellants, to the second paragraphs of which appellee's demurrers were sustained, also separate cross-complaint of appellant Michigan Central Railroad Company, to which appellee's demurrer was overruled.  Trial by the court, finding for appellee, and a decree for perpetual injunction against appellants.  Appellants filed separate motions for a new trial, specifying, among other things, that the decision of the court was contrary to law and was not sustained by sufficient evidence.  These motions for a new trial were overruled.

The complaint avers, in substance, that plaintiff is a corporation duly and legally organized and incorporated under the general laws of the State of Indiana governing and controlling the incorporation and existence of street-railway companies; that it has been incorporated and has existed as

a street-railway company during more than ten years last past; that it has been engaged in operating a street-railway in the city of Hammond during ten years last past, and is so engaged at the present time; that its said street-railway has been and is operated upon the public streets and highways in said city under an ordinance and franchise of said city granting plaintiff the right so to operate its street-railway; that defendants are corporations, and own and operate various lines of steam railways, and own and operate railroad tracks, switches and other appliances necessary in the operation of steam railways; that on March 1, 1904, plaintiff was granted the right by the common council of the city of Hammond to construct and operate its street-railway by electricity over tracks laid on Calumet avenue, a public street in said city; that the portion of Calumet avenue so granted to plaintiff's use crosses the tracks of said defendants; that it is necessary for the tracks of plaintiff to cross the tracks of defendants at grade; that defendants refused to permit plaintiff to cross said tracks, and so obstructed the way as to make it impossible for plaintiff to cross the same. The complaint avers plaintiff's intention to cross the tracks in the usual and ordinary way, and to guard and to protect defendants in every legal way, specifically setting out the necessary facts, but does not propose to put in an interlocking system. It contains many other averments not necessary here to be set out. The answers are in the nature of a general denial of these facts. The evidence in the case supports the averments of the complaint.

The only questions presented and argued arise from rulings on the demurrers and on the motion for a new trial. They are the same, and present the simple questions 1. of the right of appellee to cross appellants' right of way and tracks without permission or condemnation, and without installing interlocking devices. It is contended

that appellee is a commercial railroad, and that its occupancy of the streets is an additional servitude on the fee thereof, and hence it has no right to cross the right of way of appellants without grant or condemnation. It is shown by the evidence that appellee operates large, double-truck cars through the cities of Hammond, East Chicago and Whiting, all of which cities are contiguous to and in conjunction with an Illinois corporation, to Sixty-Third street in the city of Chicago; that all of said lines, except a very small portion, are within the corporate limits of a city or town; that no interstate cars are run, or are expected to be run, over Calumet avenue, only local cars being operated thereon; that its franchise permits it to carry United States mail and persons and property, as provided by the act of the legislature of 1901 (Acts 1901, p. 461, §§5468a-5468h Burns 1901); that only passengers have, in fact, been carried over appellee's lines; that appellee was organized under the general street-railway laws, and uses electricity as a motive power; that its lines are built on the public streets and highways; that it stops at all street crossings in the cities and towns through which it passes, and between such crossings where the distance is great or the convenience of passengers requires it, to take on or let off passengers; that it maintains its tracks at a level with the streets and has paved and sprinkled certain portions thereof; that five-cent fares could be charged from any point on its said lines to any other point thereon within the State, and transfers issued for connecting lines within any of said cities and towns operated by appellant.

These facts clearly show that appellee was invested with and was exercising the rights, powers and privileges of a street-railway company, and no more. In fact it has heretofore been decided by the Supreme Court that this appellee was a street-railway company, and entitled to these rights

70 · APPELLATE COURT OF INDIANA,

Michigan Cent. R. Co. *v.* Hammond, etc., Elec. R. Co.—42 Ind. App. 66.

in the streets of said city. *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.* (1894), 139 Ind. 297, 26 L. R. A. 337, 47 Am. St. 264.

This being true, it is the settled law in this State that its occupancy of the streets of Hammond is for the purpose of affording modern means of travel thereon, and is not an additional burden upon the fee thereof. *Kinsey* v. *Union Traction Co.* (1908), 169 Ind. 563; *Mordhurst* v. *Ft. Wayne, etc., Traction Co.* (1904), 163 Ind. 268, 66 L. R. A. 105, 106 Am. St. 222; *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co., supra; Eichels* v. *Evansville St. R. Co.* (1881), 78 Ind. 261, 41 Am. Rep. 561; *South East, etc., R. Co.* v. *Evansville, etc., R. Co.* (1907), 169 Ind. 339.

It is also urged that the complaint and evidence are insufficient, in that each fails to show a compliance with the statute requiring interlocking devices at railway crossings. A determination of this question involves the construction of said statute. The statute sought to be invoked was enacted by the General Assembly of the State in 1897 (Acts 1897, p. 237, §§5227-5234 Burns 1908). It is entitled: "An act on the subject of, and relating to railroad crossings." The first section (§5227, *supra*) provides that when it becomes necessary for one railroad to cross another railroad, unless the manner of crossing shall be agreed upon, the matter shall be presented to the circuit court, which shall decree how such crossing shall be made.

The second section (§5228, *supra*) provides that, where two railroads or a steam railroad and an electric railroad cross each other, if an interlocking system is installed, to be approved by the Auditor of State, which will render it safe for engines or trains to cross without stopping, then it shall not be unlawful for such engines and trains so to cross.

Section three (§5229, *supra*) prescribes the procedure in cases where two railroads, or a steam railroad and an electric railroad already built, cross each other, and one com-

pany desires to unite with the other and install an interlocking system, and the two companies cannot agree.

Section four (§5230, *supra*), which is the section directly involved, is as follows: "In case, however, one railroad company or an electric railroad company shall hereafter cross at grade with its track or tracks, the track or tracks of another railroad, the railroad company or the electric railroad company seeking to cross at grade shall be compelled to interlock such crossing to the satisfaction of the said auditor, and to pay all cost of such appliance, together with the expense of putting them in and the future maintenance and operation thereof." If this section of the statute applies to appellee, in the case here presented, then the complaint does not state a cause of action, and the evidence does not sustain the decision of the court, since there is no averment in the complaint of an attempt or intention to provide an interlocking system and no evidence of such fact. It is earnestly insisted that appellee constitutes an electric railroad within the meaning of said section, and therefore it would have no right to cross appellants' track until it had complied or offered to comply with the provisions thereof.

As we have seen, appellee's line is a street-railway, operated by electricity, occupying the streets of said city. As far back as 1861 (Acts 1861 [s. s.], p. 75) the legislature of the State granted to street-railway companies the right to occupy the streets of cities and towns. In 1881 the Supreme Court held such occupancy was a proper use of the public easement, saying: "When authorized or regulated by the public authorities, this is a public use within the fair scope of the intention of the proprietor when he dedicates the street or is paid for property to be used as a street. Such proprietor must be taken to contemplate all improved and more convenient modes of use." *Eichels* v. *Evansville St. R. Co., supra.*

This doctrine was reaffirmed in the case of *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co., supra,* where appellant re-

sisted the efforts of appellee to cross its tracks on the streets of Hammond. The appellee in that case was the appellee in the case before us, and the court there held the right of appellee to cross appellant's tracks was an exercise of the public right of passage. The averments of the complaint in the case last cited show that appellee's road was a street-railway extending through the cities, towns and connecting highways of Hammond, East Chicago, Whiting and Roby to the state line, and operated by electricity. It therefore appears that at the time of the passage of the act of 1897, *supra,* it was an established rule of law, not only in this State, but in all the states, so far as we have been able to discover, where the question had arisen, that electric street-railway companies had the same rights in the streets and highways, and the same right to cross the tracks and right of way of a steam railroad on the public streets and highways that horses, wagons, drays and omnibuses had, each being a form of carriage for the benefit and convenience of the traveling public exercising the public right of passage.

We know, as a matter of public history, that at the time of the passage of the act of 1897, *supra,* this right of crossing on highways had been exercised in a great many cities in the State where electric street-railways and steam railroads were both maintained. We also know that interlocking systems consist in part of appliances that occupy space and would be obstructions, if constructed in the streets and highways, that would seriously interfere with the rights of the public therein.

At the time of the passage of the act of 1897, *supra,* by §2293 Burns 1901, §2172 R. S. 1881, it was made unlawful for an engineer of any locomotive on a railroad, over which passengers were or might be transported, to run his locomotive across or upon another railroad track over which passengers were being or might be transported, without coming to a full stop and ascertaining if the way was clear. These provisions of this statute with additional enactments have

MAY TERM, 1908. 73

Michigan Cent. R. Co. *v.* Hammond, etc., Elec. R. Co.—42 Ind. App. 66.

been in full force from the time of its passage in 1881 until the present, yet has never been construed to apply to street-railway crossings on the public thoroughfares, although these street-railways were operated by electricity. This statute was for the purpose of avoiding collisions and the consequent destruction of human life. To relieve the railroads from the inconveniences and delays necessarily occasioned by the stoppage of trains at crossings, and still maintain the protection to the traveling public, the legislature enacted the law of 1897, *supra.* It had for its primary object the relief of the intersecting railroads from a burden which the safety of the public made necessary. A relief that could only be obtained by substituting a protection that was considered equally as good. This is evident from the first three sections of the act. Under it, intersecting railroads already constructed had the choice of alternatives: They could either continue to stop their trains, as required by law, or they could put in the protecting devices, as stipulated. The ultimate purpose in either event being the protection of the traveling public. We cannot attribute to the legislature the intention to compel the erection of obstructions, such as interlocking systems, in the public streets and highways by street-railways, which, in theory at least, are not obstructions to the free use thereof, for the primary benefit of the railroads crossing the same, it being the policy of the law to keep the public thoroughfares as free from obstructions as the growing demands of the public will permit.

The primary purpose of the act of 1897, *supra,* as we have seen, is to enable railroads to avoid the stopping of trains at crossings where under the law they were required to stop, and yet not incur the penalty of §2293, *supra.* There would be no reason for applying the law to street-railway crossings in streets, since by the practical construction of a long series of years the penal statute before cited had been considered inapplicable to such crossings. We are not without authority for the views here expressed. In the case of

74    APPELLATE COURT OF INDIANA,

Michigan Cent. R. Co. *v.* Hammond, etc., Elec. R. Co.—42 Ind. App. 66.

*Wabash R. Co.* v. *Ft. Wayne, etc., Traction Co.* (1903), 161 Ind. 295, the court say: ''The objection that the question whether it is practicable to avoid a grade crossing, and, if not, the mode of such crossing, must be submitted to the circuit court of the proper county for determination, is not well founded. Section 5158a Burns 1901 [§5227, *supra*] of the general railroad law does not apply to street or interurban electric railroads, but the latter are governed in proceedings to acquire a right to cross another railroad by §5468e Burns 1901, Acts 1901, p. 461, §5. * * * The provisions of §5158b *et seq.* Burns 1901 [§5228 *et seq.* Burns 1908, Acts 1897, p. 237, §§2-8] relate exclusively to interlocking devices to avoid the necessity for stopping trains before passing over the tracks of intersecting railroads, and have nothing to do with condemnation proceedings under the street and interurban railroad act of 1901.''

Section 5468a Burns 1901, being section one of the act of 1901, *supra,* authorizes street or interurban railroads to cross other railroads, and provides that in case such street-railway company shall cross the tracks of any other street-railway company or any railroad company at any place not within the limits of any street or highway, if the two corporations cannot agree, the compensation and manner of crossing shall be determined as provided in §5468e, *supra.*

As a further evidence of the recognition of the rights of street-railways in the public thoroughfares, and intention of the legislature to regard them as in a distinct class, and not subject to the conditions requiring interlocking devices, the General Assembly of 1903 passed two acts providing for the crossings of street-railroads and steam railroads, one of which was amendatory of section one of the act of 1901, *supra* (Acts 1903, p. 92, §5675 Burns 1908), and the other (Acts 1903, p. 125, §§5666-5670 Burns 1908) provided for the installation of interlocking devices, but each expressly provides that it shall not abridge the right, under existing

MAY TERM, 1908.     75

Michigan Cent. R. Co. *v.* Hammond, etc., Elec. R. Co.—42 Ind. App. 66.

laws, of any street or interurban railway company, authorized to locate its road upon a public highway, to construct such road across the tracks and right of way of any railroad at a street or highway intersection without first obtaining the consent of the owner of the railroad to be crossed and without special proceedings.

In construing these acts, the Supreme Court in *South East, etc., R. Co.* v. *Evansville, etc., R. Co., supra,* say: "It is quite plain that the provisions of each of said acts relate wholly to crossings of street, interurban and suburban railroads with other railroads at places outside of public highway intersections."

The acts of 1901, *supra,* and 1903, *supra,* show a constant intention of the legislature to exempt street-railways upon highways from the statutes requiring interlocking devices at crossings within such highways. The legislature may well have considered that such crossings were capable of being sufficiently protected without the use of interlocking devices, and many laws and ordinances for this purpose are now in force, such as the provisions requiring street-cars to be brought to a full stop and the sending of a man ahead across the tracks of the intersecting road; the installation of safety-gates and signal-bells, and the maintenance of watchmen; the regulation of the speed of trains through towns and cities; and the sounding of whistles and ringing of bells when approaching such crossings—all of which protective measures might well be deemed as effective, if properly observed, as interlocking devices. *Cincinnati, etc., St. R. Co.* v. *Cincinnati, etc., R. Co.* (1898), 12 Ohio C. C. Dec. 113. For the foregoing reasons we are of the opinion that the act of 1897, *supra,* does not apply to crossings of electric street-railways within the limits of a public street or highway.

3.

The question is suggested, but hardly seriously contended for, that that portion of Calumet avenue within appellant

Michigan Central Railroad Company's right of way is not a public street, having never been platted or condemned. There is no merit in this contention. Calumet avenue was platted and dedicated to the public up to and on either side of said right of way in 1887, and very soon thereafter said appellant opened the street through its right of way, connecting and in line with said street, as platted on either side thereof, built its fences and cattle-guards, conforming to the lines of the platted street, put in a plank crossing over its tracks, and built sidewalks connecting with the sidewalks on either side of its right of way. The use of the way thus provided was at once accepted by the public and city authorities. Appellant, with knowledge and without objection, permitted the city authorities to grade, drain, macadamize and curb it, put in a signal-bell, and watch-tower, provided watchman, submitted to and obeyed the orders of the city in improving the crossing, permitted the adjacent farm lands to become thickly settled on either side of said street and on either side of its right of way. In fact, said portion of said street was treated in every respect by the appellant Michigan Central Railroad Company, the public and the city authorities as though it had been regularly laid out and established. This use, occupancy and authority over said portion of said street have been continuous and constant from 1887 to the present, and said street over and across said right of way has become one of the principal thoroughfares of the town. These acts of appellant in effect amount to a dedication as effectually as if it had been made by express dedication or grant. *Lake Erie, etc., R. Co.* v. *Town of Boswell* (1894), 137 Ind. 336; *Pittsburgh, etc., R. Co.* v. *Noftsger* (1897), 148 Ind. 101; *Summers* v. *State* (1875), 51 Ind. 201; *Holcraft* v. *King* (1865), 25 Ind. 352; Elliott, Roads and Sts., 98, 99.

Said appellant having dedicated to the public the street across its right of way, without limitation or reservation, and such dedication having been accepted, it cannot now

MAY TERM, 1908. 77

Michigan Cent. R. Co. *v.* Hammond, etc., Elec. R. Co.—42 Ind. App. 66.

say that the right of the public in the easement over its right of way and tracks is less than it would have been had such easement been regularly established by express dedication. The dedication having been once accepted, cannot be recalled. *Summers* v. *State, supra;* Elliott, Roads and Sts., 98, 99.

Whether appellant is the owner of the fee or only a right of way is immaterial. Whatever it has is subject to the highway easement it has dedicated to the public, and 6. it has no right to interpose an objection to any proper use of such highway. In *South East, etc., R. Co.* v. *Evansville, etc., R. Co.* (1907), 169 Ind. 339, the court say: "It does not appear from the pleadings whether the railroad was senior or junior to the highway crossed. We need not decide whether seniority would enlarge the rights of the railroad with respect to the matter under consideration, since the exercise of its franchise over the crossing was subject to the burden of the public easement in the highway." And since it has been determined that the operation of a street-railway is a proper use thereof, it being designed to facilitate public travel, and is a form of passage within the scope of a highway dedication, appellant can no more object to the passage of street-cars than to the passage of carriages, omnibuses or any other recognized mode of highway travel. When appellant dedicated said highway to the public it did it with the knowledge and upon the condition that it "must submit to such growing inconveniences as might result from the development of the country, among which would be the wants and demands of the public for better facilities in traveling." *South East, etc., R. Co.* v. *Evansville, etc., R. Co., supra.*

Appellant Michigan Central Railroad Company also contends that it is the owner of the fee and of the tracks of its line; that appellee proposes to dig up its soil and cut 7. its rails, and that its private rights will thereby be invaded. But these are inconveniences and inter-

ferences incident to having a highway cross its line, and must have been contemplated when it opened up the highway over its property. It was bound to know that a street-railway might thereafter be lawfully located upon said street, and across its line at that point. It is in the same position as the abutting property owner, whose soil is dug up and carted away, and whose sewer and water connections are cut in the laying of street-railway tracks, or improvement of the streets whenever new and better facilities for travel require it. Such are the burdens of the servient estate, and are not encroachments upon the private rights of the owners thereof. *South East, etc., R. Co.* v. *Evansville, etc., R. Co., supra.*

Judgment affirmed.

## CONCURRING OPINION.

WATSON, J.—It is expressly held in *South East, etc., R. Co.* v. *Evansville, etc., R. Co.* (1907), 169 Ind. 339, that "the owners of a steam railroad are not entitled to recover compensation for the crossing of its tracks, at a public highway intersection, by an electric interurban road built upon such highway with the consent of the board of commissioners of the county." The authority of that decision controls in this case, and I agree that the judgment appealed from should be affirmed.

The facts presented by this appeal do not raise any question as to the right of an adjacent landowner to recover damages for injury to his property caused by the construction and operation of an interurban railway in the street. That question is an open one in this State, and I do not concur in the expressions in the opinion regarding it. *Chicago, etc., R. Co.* v. *Whiting, etc., St. R. Co.* (1894), 139 Ind. 297, 26 L. R. A. 337, 47 Am. St. 264, was decided before interurban railways had become a distinct class. It was in that case admitted by the court that the street-railway was not an additional servitude, but, notwithstanding such admis-

sion, the court did not approve, but "seriously doubted the soundness of the rule thus conceded."

Whatever authority may be accorded to the dictum in *Mordhurst* v. *Ft. Wayne, etc., Traction Co.* (1904), 163 Ind. 268, 66 L. R. A. 105, 106 Am. St. 222, is destroyed by the reasons given by the court in the case of *McCleary* v. *Babcock* (1907), 169 Ind. 228, in which commercial railroads, whether operated by steam or electricity, are properly put on the same footing.