## GALVESTON, HARRISBURG & SAN ANTONIO RAILWAY COMPANY v. HOUSTON ELECTRIC COMPANY.

Decided October 20, 1909.

**1.—Street Railways—Construction upon Highways—Constitution.**

Section 7, of article 10, of the Constitution, is merely prohibitive, but recognizes by implication the right to build street railways within any city, town or village, or upon any public highway when the consent of those to whom the supervision and control of the streets and highways are confided, is obtained.

**2.—Public Highways—Constitution.**

The term "public highways" as used in section 7, article 10 of the Constitution is used to describe some public thoroughfare different from a street in a city, town or village and can not be construed to mean streets, nor can it be held to apply to streets in an incorporated town or village as distinguished from the streets in an unincorporated city, town or village.

**3.—Same—Local Authorities.**

The Commissioners Court are the "local authorities" in this State within the purview of section 7, article 10 of the Constitution, who have authority to grant permission to build a street railway along a public highway in the country.

**4.—Street Railway—Intersection of Railroad.**

A street railway company to whom has been granted by the Commissioners Court of the county the right to construct its road along a public highway can not be prevented by a steam or commercial railroad company from intersecting its track also on said highway.

**5.—Corporation—Rights Fixed by Charter.**

The character, rights and duties of a corporation are fixed by its charter, and these can not be changed by an order of a Commissioners' Court authorizing it to do acts and perform services which are not warranted by its charter.

**6.—Street Railways—Acts Construed.**
   Neither the Act of 1901 (Gen. Laws 1901, pp. 255, 256), nor the Act of 1907 (Gen. Laws 1907, p. 23) has reference to street railways.

Appeal from the District Court of Harris County.   Tried below before Hon. W. P. Hamblen.

*Lane, Wolters & Storey* and *A. L. Jackson,* for appellant.

*Andrews, Ball & Streetman,* for appellee.

FLY, ASSOCIATE JUSTICE.—Appellant sought to restrain appellee from building a line of suburban street railway across its line of steam or commercial railway about three and one-half miles from the City of Houston, at a point where said commercial railway crosses the public road leading from said city to Harrisburg.   A temporary writ of injunction was issued, and appellee answered, setting up the facts and, by way of a cross-action, prayed that appellant be restrained from interfering with it in building the desired crossing.   On a final hearing the temporary order was set aside, the application of appellant was denied and an order was made restraining appellant from interference with appellee in building the crossing, and a suitable person was appointed to supervise and superintend the installation of a standard grade crossing which appellee was authorized to build.   From that order of the court this appeal has been perfected.

Upon the petition of numerous citizens of Harris County living in the vicinity of the public road leading from Houston to Harrisburg, permission was granted by the Commissioners' Court to appellee to build an electric street railway along the public road which was crossed by appellant's line of railway.   Appellee sought to build its line along the said public road and across the line of appellant's commercial railroad, as empowered by the Commissioners' Court, the crossing known as the "standard crossing," to be a perfectly safe and convenient one and under its rules, to which it was commanded to adhere by the decree of the court, would be attended with no danger to passengers or operatives on either line of railway.   Railroads around Houston are crossed at numerous places by street railways by grade crossings, and no interlocking devices are required and no inconvenience or danger results therefrom.   It appeared that neither a non-grade crossing or an interlocking device was required at the point in question, and at a similar point appellant had recently consented to a grade crossing over its line near Houston by an electric railway company, and the same had been continuously operated without accident or injury to any one.   The building of the line of electric railway is a public convenience and necessity.   The franchise was granted for twenty-eight years and restricted the use of the road to the carriage of "passengers, mail, express matter, parcels, packages and passengers' baggage only," and the motive power was confined to electricity, "or gasoline in cases of emergency."

The following proposition is made under the first assignment of error:   "The Commissioners' Court of Harris County had no power,

under the Constitution or the laws of Texas, to authorize the possession, appropriation or use of a public road for any purpose except a public use according to the usual methods of travel; and any order attempting to confer upon a private corporation the right to make an unusual or extraordinary appropriation or use of such public road is void."

In article 10, section 7 of the State Constitution, it is provided: "No law shall be passed by the Legislature granting the right to construct and operate a street railroad within any city, town or village, or upon any public highway, without first acquiring the consent of the local authorities having control of the street or highway proposed to be occupied by such street railroad." The section is merely prohibitory, and does not directly grant any authority for the erection of railways along streets or public highways, but by implication recognizes the right to build along such thoroughfares if the consent of those to whom the supervision and control of the streets and public highways are confided is obtained. So it has been specially decided in the case of The Mayor v. Street Railway Co., 83 Texas, 548, in regard to the streets of a city, and if the public roads of a county are comprised within the term "public highways," the authority to build street railroads upon such public roads is recognized to rest in the "local authorities." The words "public highways" are clearly used to describe some public thoroughfare different from a street in a city, town or village, and can not be construed to mean streets, nor can they be held, with any degree of reason or force, to apply to streets in an incorporated town or village as contra-distinguished from the streets in an unincorporated city, town or village. If the desire had been to confine the power to grant authority to erect and operate street railways to the streets of cities, towns or villages, the words "public highways," being superfluous and confusing, would never have been used. It is stated by Nelms in his work on "Street Surface Railroads," p. 71, that in nearly every State of the Union a like provision is found either in the Constitution or some statutory provision, and in some of them is recognized the right of county boards, commissioners or supervisors, corresponding to the Commissioners' Court in Texas, to grant the authority for street railways to be erected along public roads or highways. Matter of Rochester Electric Railway Co., 123 N. Y., 351; State v. Board (N. J.), 28 Atl., 553. We have seen no decision denying such authority.

The term "local authorities," used in the Constitution, is defined in the New York cited case as "those officers on whom the administration of the government of the particular political subdivision of the State, by virtue of their office, devolves, in relation to the subject matter of the legislative provision." In Texas the Commissioners' Court is created by the Constitution, and it is given "such powers and jurisdiction over all county business as is conferred by this Constitution and the laws of this State, or as may be hereafter prescribed." Under that authority the Legislature has conferred upon Commissioners' Courts the power "to lay out and establish, change and discontinue public roads and highways," and "to exercise general control and superintendence over all roads, highways, ferries and bridges in their

counties." Commissioners' Courts are therefore the "local authorities," within the purview of the Constitution, from whom permission to build a street railway along the public highways of a county must be obtained. Control of streets and public highways of a county has been given by law to the local authorities of cities and counties, and the Constitution delegates to them alone the authority to permit street railways to construct their lines upon such streets and highways.

Having been granted by the only authority that could grant it, the privilege of using the road for the construction of its track, appellee could not be deprived of that right because appellant has been permitted to cross the public road, and objects to any other railway company using such road, although the citizens owning the land in the vicinity of the road and for whose use it was primarily constructed have petitioned the county authorities to grant. the privilege to the street railway of occupying the public highway. However unusual it may be to use "a rural public highway for the permanent location and maintenance of a street-car roadbed and track," as stated by appellant, the Constitution and statutes authorize it, the citizens interested in the public road demand it, the Commissioners' Court has permitted it, and appellant has no right to complain.

Appellee was incorporated under the provisions of article 642, section 21, which authorizes the formation of corporations "for the constructing, acquiring and maintaining and operating street railways and suburban belt lines of railways within and near cities and towns, for the transportation of freight and passengers." Appellee's desired line of railway is within and near the "city of Houston," and we think that the construction of the railway is fully authorized by its charter. The terms of the statute fully contemplate the construction and operation of street railways beyond the limits of cities, and clearly authorize such construction and operation. Harrisburg is but a short distance from the city of Houston, and the testimony tended to show that it is practically a suburb of that city.

Appellant has no right in the public roads of Harris County except those granted it by the proper authorities, and it can not assume the function of protecting the public from encroachments upon the highways by other corporations, and can not assume the authority of the State in inquiring into the legality of appellee's acts under its charter. The evidence clearly indicates that it will not be injured by a crossing to which its resident engineer gave the stamp of his approval, and which is necessary for the accommodation and comfort of a number of the citizens of Harris County. Its rights have been fully protected by the decree of the court. Appellee is not seeking to take possession of anything belonging to appellant, but is merely trying to do what any vehicle of any kind, authorized on a public road, has the right to do—get across a railroad built over a public highway.

No additional burden will devolve upon appellant by the crossing constructed by appellee, and it has acquired no right by being authorized to cross the public road as would empower it to stop the wheels of progress and thwart the efforts of the public to obtain cheaper and faster transportation. It has been held time and again, in this State. and others, that no new burden or servitude is imposed upon a public

street or highway by constructing and operating a street railway thereon whose cars are propelled by electricity for the transportation of passengers. Aycock v. San Antonio B. Ass'n, 26 Texas Civ. App., 341; Rische v. Texas Transportation Co., 27 Texas Civ. App., 33; Texas & P. Ry. v. Rosedale St. Ry., 64 Texas, 80; San Antonio R. P. S. Ry. v. Limburger, 88 Texas, 79; Southern Ry. v. Atlanta Trac. Co. (Ga.), 36 S. E., 873; Chicago & C. T. Ry. v. Whiting; H. & E. C. Ry. (Ind.), 38 N. E., 604; Kinsey v. Union Trac. Co. (Ind.), 81 N. E., 922; Southeastern & St. L. Ry. v. Evansville & Mt. V. Ry. (Ind.), 82 N. E., 765; Michigan Cent. Ry. v. Hammond, W. & E. C. Elec. Ry. (Ind.), 83 N. E., 650.

In several of the cases cited it was held that the right of way acquired by steam railroad across a public highway is subject to the operation of a street railway, that it imposes no additional burden, and that it can cross the steam railroad tracks without compensation to the company. Quotations from some of the authorities will indicate the reasons for such decisions.

In the case of Chicago & C. Term. Ry. v. Whiting, H. & E. C. St. Ry., 38 N. E., 604, it is said: "So long, therefore, as it is the settled law of this State that a street railway is not an additional burden to that of the easement the general public has in the street, and that the street railway company's right to use the street is founded on that easement, that long it must be held that the right of such street railway to cross over the tracks of a steam railway laid on such street is subject to no conditions other than those to which the general public is subject in traveling over such streets. When the steam railway company obtains its right of way over and along a public street, it does so subject to the right of the general public to use that street, and the street crossings over its tracks; and it is generally incumbent on such steam railway companies to make such crossings as passable for the general public as they were before the construction of the tracks thereon. . . . In short, the appellant's rights obtained in the use of the streets for its steam railway were subject to the burden of the appellee's use thereof, in the ordinary and proper manner, for its street railway."

In the case of Southeast & St. L. Ry. v. Evansville & Mt. V. Ry., 82 N. E., 765, the court held: "Assuming that the railroad was constructed across the highway, its owners thereby acquired merely the privilege of crossing in the transportation of freight and passengers, subject to all proper uses to which the highway might be devoted under the law. The owners of the railroad were bound to know that a street or interurban railroad might thereafter be lawfully located upon such highway and across the track at that point. The board of commissioners in whom the authority was lodged, determined that the location and construction of the interurban road upon the highway would subserve the convenience of the traveling public. When appellants obtained the privilege of crossing the highway, they did it with the knowledge and upon the condition that they must submit to such growing inconveniences as might result from the development of the country, among which would be the wants and demands of the public for better facilities in traveling. Appellants complain that their track

will be cut and their private rights invaded. Such interference must have been contemplated when their road was located across a public highway . . . . Our conclusion, therefore, is that the owners of a steam railroad are not entitled to recover compensation for the crossing of its track, at a public highway intersection, by an electric interurban road built upon such highway with the consent of the board of commissioners of the county, nor can such crossing be enjoined until compensation therefor shall have been assessed and paid or tendered." A long list of authorities were cited to sustain the decision.

The case of Michigan Central Railroad v. Hammond W. & E. C. Electric Railway, 83 N. E., 650, not only holds as do the cases quoted from, but in addition defines a street railroad and holds an electric railway carrying mail, persons and property was a street railway and not what is known as a commercial one and, therefore, its occupancy of a street or road was not an additional servitude. The same contention is made in this case, but it is not shown that appellee's character authorizes it to carry freight, and its character cannot be fixed by the order of the Commissioners' Court giving it permission to build along the Harrisburg Road. Its character is fixed by the charter which it obtained from the State of Texas, and not by orders made by the Commissioners' Court. It was not shown that it had ever carried freight, and should it attempt to do so in violation of the terms of its charter the State will be fully able to care for the matter.

The Act of 1901 (Gen. Laws 1901, pp. 255, 256.) has no reference to street railways, and neither does the Act of the Thirtieth Legislature (Gen. Laws 1907, p. 23) appertain to street railways. Appellee obtained its charter under a different statute, and claims the right to cross the railroad of appellant in a public road just as a dray or wagon would claim the right to cross. Having obtained permission of the "local authorities" it claims the right of any other vehicle using the public road. The judgment is affirmed.

*Affirmed.*

Writ of error refused.