## Snow, Administrator, *v.* Indianapolis and Eastern Railway Company et al.

[No. 7,068.    Filed February 22, 1911.]

1. Railroads. — *Interurban.—Private Crossings.—Travelers.—Contributory Negligence.—*A traveler who is familiar with a private interurban railroad crossing and its surroundings, and who attempts to cross when an approaching car is visible to him for a considerable distance before he reaches such crossing, and the motorman sounds his whistle at a distance of 600 or 700 feet from the crossing, is guilty of contributory negligence as a matter of law.    p. 193.

2. Railroads. — *Crossing Accidents. — Contributory Negligence. —* Where one voluntarily crosses an interurban railroad track in front of an approaching car which was or could have been seen, he is guilty of contributory negligence as a matter of law. pp. 194, 197.

3. Railroads.—*Crossing Accidents.—Travelers.—Assumptions as to Conduct.—*A motorman has the right to assume that a traveler approaching a crossing will use all of his faculties to avoid an approaching car, and that he will stop when danger threatens. p. 194.

4. Railroads.—*Interurban.—Operation of, on Private Rights of Way.—*Interurban railroad companies, in the operation of their cars on their private rights of way, are governed by the same laws as steam railroads.    p. 195.

5. Railroads. — *Crossing Accidents. — Instructions. — How Considered.—*Instructions concerning the law applicable to the care necessary in approaching a private crossing of an interurban railroad company, are not erroneous, where the killing occurred at such a crossing, and are not misleading when considered with other instructions correctly stating the law as to other branches of the case.    p. 196.

6. Railroads. — *Interurban.—Crossing Accidents.—Travelers.—Impaired Hearing.—Instructions.—*An instruction that if the decedent was hard of hearing, the law required him to make use of his other senses to avoid an approaching car, is not erroneous. p. 196.

7. Railroads. — *Interurban. — Crossing Accidents. — Contributory Negligence.—Instructions.—*An instruction that if decedent drove upon the track of an interurban railroad company when a car was so near that a collision was unavoidable, and where, if he had looked, he could have seen the approaching car, he could not recover, is correct.    pp. 196, 198.

8. RAILROADS.—*Interurban.—Crossings.—Respective Rights of Company and Traveler.*—A railroad company and a traveler have equal rights upon a public crossing, except that the company has the right of priority of passage.   p. 196.

9. RAILROADS.—*Interurban.—Crossings.—Assumptions as to Traveler's Capacity.—Instructions.*—An instruction that a motorman may assume that a traveler, approaching a crossing has the ordinary faculties, until something appears to the contrary, is correct.   p. 197.

10. RAILROADS.—*Operation of.—Instructions.—Assuming Facts.*— An instruction that defendant interurban railroad company "had the right to operate its car over the National road, at the time and place where the decedent was injured, as averred in the complaint," does not assume that it had the right to operate the car "negligently" as averred.   p. 197.

11. RAILROADS.—*Crossing Accidents.—Last Clear Chance.—Instructions.*—An instruction as to the "last clear chance" doctrine is not applicable, where a traveler drove upon an interurban crossing, when, if he had looked, he could have seen the approaching car in time to avoid a collision.   p. 197.

12. TRIAL.—*Instructions.—Duplication.*—Instructions should not be duplicated.   p. 197.

13. RAILROADS.—*Negligence.—Proximate Cause.—Instructions.*—An instruction that if defendant interurban railroad company negligently operated its car and such negligence was the proximate cause of the death of plaintiff's decedent, the plaintiff should recover, should be refused, since it is incomplete.   p. 198.

14. RAILROADS.—*Speed in Country.—Instructions.—Harmless.*—An instruction that an interurban car "may be run at a higher rate of speed over public highways in the country than on the streets of a city," while possibly misleading if standing alone, when read with the other instructions it correctly stated the care required where the killing occurred.   p. 198.

15. APPEAL.—*Right Result.*—Where the trial court reached the right result, its judgment will be affirmed.   p. 199.

From Hancock Circuit Court; *Robert L. Mason,* Judge.

Action by Henry Snow, as administrator of the estate of Wesley Addison, deceased, against the Indianapolis and Eastern Railway Company, and another. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Charles L. Tindall,* for appellant.
*W. W. Cook* and *W. H. Latta,* for appellees.

IBACH, J.—This is an action brought by appellant to recover damages on account of the alleged negligence of appellee Indianapolis and Eastern Railway Company which caused the death of his decedent, and for the benefit of his next of kin.

The complaint, to which a demurrer for want of facts was overruled, is in one paragraph, and, omitting the formal parts, discloses that on October 12, 1906, plaintiff's decedent was at the residence of Alonzo Tyner, who lived on a public highway in Hancock county, known as the National Road; that on said day plaintiff's decedent started to return from Tyner's residence to his own home, in a buggy, and drove north on the private way leading from said Tyner's residence to the traveled portion of said National Road; that in order to reach said road it was necessary to cross the tracks of said defendant; that west of the driveway, between the house of said Tyner and the defendant's tracks, there were a number of trees, bushes, trolley poles and telephone poles, which obstructed decedent's view of the tracks; that plaintiff's decedent approached said defendant's tracks in a buggy at a slow trot, and attempted to cross said tracks at said crossing, and while on the tracks, defendant Indianapolis and Eastern Railway Company, by its servants, carelessly and negligently approached from the west with one of its cars, at a high and dangerous rate of speed, and negligently ran it upon and against the decedent's buggy, thereby killing him.

It is alleged that said defendant's servants in charge of the car negligently failed to keep it under proper control, and negligently failed to look ahead on said public road for persons who might be traveling thereon, and that said defendant's servants negligently ran said car upon decedent, without giving any signal or warning whatever in time so that decedent could, in the exercise of ordinary care, have avoided said injury; that owing to said obstructions decedent could not see nor hear said defendant's car in time

to avoid said collision, and that he was unaware of the approach of the car until he was upon the tracks at the crossing, at which time decedent's position was suddenly and unexpectedly rendered perilous; that he urged his horse forward, attempting to clear the track, and did everything in his power to reach a place of safety, but that he was unable to do so on account of the high and dangerous rate of speed of the car; that through the negligence of said defendant, decedent was killed; that defendant Terre Haute, Indianapolis and Eastern Traction Company has taken over to itself all the property, rights and franchises of the Indianapolis and Eastern Railway Company, and is now in possession of and owns said railroad; that said decedent left surviving him his widow, Elizabeth J. Addison, and his daughter, Anna Shimm, formerly Anna Addison, aged twenty-nine years, both of whom were living with said decedent as members of his family at the time of his death, and dependent upon him for support; that decedent earned $1,000 a year prior to his death; that, by reason of the facts aforesaid, his said widow and child have been damaged in the sum of $10,000, for which plaintiff demands judgment.

Upon the issues formed by general denial, the cause proceeded to trial. A verdict in favor of appellees was returned, and, over the motion of appellant for a new trial, judgment was rendered against appellant that he take nothing by his action, and for costs.

The only error assigned is that the court erred in overruling appellant's motion for a new trial. The grounds therefor, relied upon for reversal, are that the court erred in giving and refusing to give certain instructions, and in the exclusion of certain evidence offered by appellant.

The following facts are revealed by the evidence in the case. Decedent had been at the home of a neighbor, and was returning to his own home, driving north along the private way leading from such neighbor's home to the main road. He was acquainted with the road and crossing over

the track where he was injured. There was nothing present at the time to attract his attention from the surroundings. He undertook to cross in the daytime over this crossing where there was a clear track, and nothing to obstruct his view of an approaching car for a long distance, both to the east and west from the point of crossing, and for several feet before driving upon it. The country surrounding the point was open and the view unobstructed. The track extended east and west and he was driving to the north. His horse was traveling at a "dog trot." He did not change the gait of the horse until after it got on the railroad track, when he got up in the buggy and slapped the horse with the lines, in order that he might hurry over, but at no time did he stop the horse prior to driving upon the track. Some of the witnesses testified that he did not even look toward the car before driving upon the track. Other witnesses stated that he did look before he entered upon the track, and then it was that he began to hurry his horse. It appears that at any point for some distance away from the crossing, before going upon the track, he could have seen the car, had he looked. Some of the witnesses testified that the whistle sounded six or seven hundred feet from the crossing; that the top of decedent's buggy was half down; that the motorman, upon approaching the place of accident, blew the ordinary crossing whistle, then gave several quick whistles and reversed the power. At that time, the horse and buggy were just coming upon the track. The car was from fifty to one hundred feet away when he came upon the track.

It thus appears that decedent was familiar with the location of the track and the surroundings; that it was in the daytime on a clear, bright day, with nothing of consequence to obstruct his view to the west in the direction of the approaching car; that he had an unobstructed view for some distance from the crossing

before going upon the track, at any point of which he could have seen the car had he looked, and that the whistle was sounded six or seven hundred feet away from the crossing. Under such a state of facts, it has been held, as a matter of law, that a person attempting to cross would be guilty of negligence defeating a recovery. *Mann* v. *Belt R., etc., Co.* (1891), 128 Ind. 138; *Wilcox* v. *Rome, etc., R. Co.* (1868), 39 N. Y. 358, 100 Am. Dec. 440; *Young* v. *Citizens St. R. Co.* (1897), 148 Ind. 54.

2. If decedent attempted to cross the track when he knew the approaching car was nearby, he thereby incurred the risk. Where one voluntarily attempted to cross a track in front of a moving car, which was seen, or could have been seen if the person had looked, and which was not far distant from the crossing, and a collision occurred, he cannot recover. *Ohio, etc., R. Co.* v. *Walker* (1888), 113 Ind. 196, 3 Am. St. 638; *Cadwallader* v. *Louisville, etc., R. Co.* (1891), 128 Ind. 518.

3. Said appellee's servants saw deceased while he was traveling along the private road, leading to the crossing, and they had the right to assume that he saw or heard the car approaching. The car was at all times within his view when he was near enough to the crossing to make it necessary for him to learn for his own safety whether a car was about to cross the track when he was attempting to cross. Said servants also had the right to assume that decedent would not voluntarily throw himself into a place of danger, but that he would make use of all of his faculties, and use ordinary care, at least, to observe the approach of a car, and they had the right to operate the car upon these presumptions.

In a well-considered case the Supreme Court said: "The conduct of the decedent, when first seen on the highway driving toward the crossing, was apparently that of an ordinary person. There was nothing to show that he was not endowed with, and possessed at the time, all the senses and

faculties ordinarily possessed by a human being. Appellant's servants had the right, under the circumstances, to presume that the decedent, before reaching the crossing, would exercise proper caution to prevent injury to himself; that he would not only listen, but also look in each direction for approaching trains, before attempting to cross the track, and, if he did so, he would see the train and be warned, and stop at the last moment, before entering on the track." *Cleveland, etc., R. Co. v. Miller* (1898), 149 Ind. 490, 503.

There has been much confusion over the rights and duties of an operator of an interurban railway, as distinguished from a steam railway. This is no doubt due to the 4. fact that an interurban railroad partakes somewhat of the character of a street railway when the tracks are laid in the street; but when we consider an interurban railroad, operated on its own private right of way, or outside of the traveled portion of a public highway, there appears no reason for distinction, and there is none.

The supreme court of Ohio said: "It seems reasonably clear that while operating the cars of an interurban railroad within a municipality, the regulations and powers of a street railroad company are. applicable, but when it comes to running cars of such railroads in the open country, upon a track substantially the same as the track of a steam railroad, and at a high rate of speed, it would seem that the same rules as to negligence, and contributory negligence, should prevail, as are applicable to steam railroads. * * * The danger is the same in either case, and where there is no difference in danger, there should be no difference in the care required, nor in the rights and liabilities flowing from the neglect to observe the proper care." *Cincinnati, etc., St. R. Co. v. Lohe* (1903), 68 Ohio St. 101, 67 N. E. 161, 67 L. R. A. 637.

The second, eighth, twelfth and sixteenth instructions, given at the request of said appellee, and which are ob-

jected to, may properly be considered together. It is claimed that the use of the words "private crossing" in each of said instructions was misleading. These instructions informed the jury relative to the care required in approaching private railroad crossings. The use of the words objected to was not erroneous when applied to the issues and the evidence in the case. These instructions might possibly be inclined to mislead the jury, when considered separately, but when considered together, and in connection with other instructions given on the same subject, they were not misleading, and were properly given.

Instruction four, given at the request of appellee, over the objection of appellant, told the jury that if decedent was hard of hearing, then the law required him to make use of his other senses to avoid danger. This instruction was applicable to the evidence, and the court did not err in so charging the jury.

Instruction six, requested by appellee, was objected to also. It told the jury if it found from the evidence that decedent drove upon the track in such close proximity to the car that a collision was unavoidable, and that if he had looked, with care proportionate to his surroundings, he could have seen and avoided said car, then he could not recover. By this instruction the jury was told that if decedent failed to exercise ordinary care, and such failure caused his injury, he was not entitled to recover. This is a correct statement of the law, and there was no error on the part of the court in so instructing the jury.

It has been repeatedly held by the courts of this State, as well as other states, that "the rights of the traveler and the railroad company upon a highway crossing are equal. Neither has an exclusive right to use it, and both are bound to do what the law requires of them. The right of the company is, however, superior in one respect, and that is, the right to the priority of passage. Of necessity this must be true, since it cannot be legally pos-

sible that trains must be brought to a halt at every highway crossing in order to allow travelers to cross." *Ohio, etc., R. Co.* v. *Walker* (1888), 113 Ind. 196, 202, 3 Am. St. 638.

Mr. Beach says of a traveler who is about to cross a railroad track: "He must assume that there is danger, and act with ordinary prudence and circumspection upon that assumption." Beach, Contrib. Neg. (2d ed.) §180.

The ninth instruction was also objected to. It instructed the jury that a motorman may assume that a person attempting to or about to cross the track of a railroad at a crossing is in the possession of his faculties, until something appears to the contrary. This instruction is correct, and is supported by the case of *Ohio, etc., R. Co.* v. *Walker, supra.*

Objection is made to instruction sixteen and one-half, requested by said appellee, which is as follows: "I instruct you that defendant had the right to operate its car over the National Road, at the time and place where decedent was injured, as averred in the complaint." Counsel for appellant insists that this instruction was misleading; that it instructed the jury that said appellee had the right to operate its car in the highway as alleged in the complaint, and that the complaint alleges negligence in the operation of the car in many particulars. The position taken by appellant is not correct. The instruction relates to the time and place of the accident, and not the manner in which the car was operated.

Instruction one, requested by appellant and refused, involved the doctrine of the last clear chance, and was not applicable to the facts in the case, and it was therefore properly refused.

Instruction three, requested by appellant, so far as applicable was covered by other instructions given.

Instruction eleven, requested by appellant and refused, would have told the jury that if it found that said appellee negligently operated its said car, and such negligence was the proximate cause of the death of decedent, then it should find for plaintiff. This instruction was incomplete, and for this reason the court did not err in its refusal. *Over* v. *Schiffling* (1885), 102 Ind. 191; *Musgrave* v. *State* (1893), 133 Ind. 297.

Objection is made to that part of instruction fifteen given by the court of its own motion, which told the jury that a car "may be run at a higher rate of speed over public highways in the country than on the streets of a city, where travel is more numerous and the streets more crowded." It is a well-established rule that instructions are to be considered as a whole, and not in fragments. The language just quoted might, standing alone, be misleading, but when read as an entirety said instruction correctly advised the jury that there was no certain standard of speed at which interurban cars might be safely run on a public highway in this State, but that determining whether a given speed was negligence or not depended upon the circumstances in each particular case; and it left the question to be determined by the jury, whether in this case the car was run at a dangerous and unsafe rate of speed, in view of the location and conditions surrounding the accident. This was one of the facts to be determined by the jury, and the instruction was properly given.

Instruction eighteen, given by the court upon its own motion, told the jury that if a person drives upon a railroad track in a highway, without looking for an approaching car, and thereby drives in front of an approaching car, in such close proximity that such person is injured by the car, that person would be guilty of contributory negligence. Appellant claims this was erroneous, because it was an invasion of the province of the jury. In view of the facts of this case, and in consideration

of all of the other instructions given, we cannot conclude that the giving of such instruction was so erroneous as to justify reversing this cause. The jury certainly could not have been misled by it.

We have considered carefully all of the instructions which are objected to by appellant, and we conclude that there was no error on the part of the court in giving or refusing to give the instructions which have been questioned. We think it clear that appellant's decedent was guilty of contributory negligence, and that such negligence was the cause of his death. The result reached in the trial in the court below seems to have been proper, and we are unable to find any error in the record.

Judgment affirmed.