## WATSON v. BRADY.

[No. 26,179.  Filed December 29, 1932.  Rehearing denied as modified May 16, 1933.]

3

*Othniel Hitch* and *Williams & Pell*, for appellant.

J. A. *Van Osdol*, *Ralph K. Kane*, *Gideon W. Blain*, and *Robert Hallowell, Jr.*, for appellee.

*Matson, Ross, McCord & Clifford, Adolph Schreiber*, and *Harry T. Ice*, amici curiae.

HUGHES, J.—This is an action by Olive E. Watson, as administratrix, against the receiver for the Union Traction Company of Indiana, to recover damages for the death of John George Watson, which resulted from a collision between an electric interurban railroad car and an automobile truck trailer in which Watson was riding, on October 14, 1927, near Indianapolis. This collision was generally known as the "Grotto wreck," and in it twenty persons lost their lives. The complaint alleges that the decedent left surviving him, his widow and three sons, ages 8, 7, and 5 years respectively, and that they have been damaged in the sum of $10,000.

The complaint is in one paragraph, to which the court sustained a demurrer on the ground that sufficient facts were not alleged. Upon refusal of the plaintiff to plead further, judgment was rendered for the defendant, appellee herein. The plaintiff appealed, assigning as error the action of the court in sustaining the demurrer.

The appellant brought the action in the Superior Court of Marion County, from which court it was later

sent to the Shelby (County) Circuit Court upon a change of venue, without first obtaining the consent of the Madison (County) Circuit Court, which court had appointed the defendant receiver. She did this pursuant to the following provisions of ch. 47, Acts 1929, p. 461, §327, Burns Supp. 1929:

> "An action against a railroad or canal corporation or company . . . for an injury to person or property upon the railroad . . . may be brought in any county through or into which such railroad . . . passes; and an action may be commenced against a receiver without obtaining the consent of the court appointing such receiver; and the summons may be served in any county in the state."

The appellee, in support of the ruling of the trial court, contends that neither the Marion nor the Shelby County Court obtained jurisdiction in the case, for the reason that such statute does not apply to an action against an electric interurban railroad, but applies only to actions against steam railroads.[1]

"Technically a railroad is a way or road upon which iron rails are laid for wheels to run on, for the convenience of heavy loads and vehicles. . . . ■■ The term 'railroad' as employed in our general legislation relates to the institutions of a *quasi*

*Note 1.* Appellee bases this contention upon the holdings in *Hughes* v. *Union Traction Company* (1914), 57 Ind. App. 202, 105 N. E. 537, 543, that the Employers' Liability Act of 1893 "was not intended in the first instance and was not now (1914) broad enough to include employees of interurban railroads"; in *Union Traction Company* v. *Thompson* (1916), 61 Ind. App. 183, 111 N. E. 648 that certain statutes relating to the fencing of railroads and liability for killing stock on their tracks did not apply to interurban railroads which were governed by special statutes on those subjects, and in *Michigan Central Railroad Co.* v. *Hammond, etc., Electric Ry. Co.* (1908), 42 Ind. App. 66, 83 N. E. 650, that an act relating to "railroad crossings" did not apply to an electric street railroad in crossing steam railroads on the streets and highways.

public character, to highways or roads constructed by authority of the state, with fixed metallic rails upon which public carriers may propel their carriages or cars speedily in the transportation of passengers and freight . . . It is the mode of construction and chartered use, and not the motive power, that determines the character of a railroad. . . . The term 'railroad' is generic, and embraces all species of road constructed and chartered with the above-mentioned attributes. . . . When the act deals with a genus, and the thing which afterwards comes into existence is a species of it . . . the language . . . is generally extended to (the) new things which were not known and could not have been contemplated by the Legislature when it was passed." *McCleary* v. *Babcock* (1907), 169 Ind. 228, 82 N. E. 453, 456. See *Muskogee Electric Traction Co.* v. *Doering* (1918), 70 Okla. 21, 172 Pac. 793, 2 A. L. R. 94.

There has been some confusion in the law over the rights and duties of an interurban railroad, as distinguished from a steam railroad, due to the fact that an interurban railroad sometimes partakes of the character of a street railway when its tracks are laid in the streets of a city, but as pointed out in *Snow* v. *Indianapolis, etc., Ry. Co.* (1911), 47 Ind. App. 189, 195, 93 N. E. 1089, 1091: "When we consider an interurban railroad operated on its own private right of way, or outside the traveled portion of a public highway, there appears no reason for distinction and there is none." See also *Cin., etc., Ry. Co.* v. *Lohe* (1903), 68 Ohio St. 101, 67 N. E. 161, 67 L. R. A. 637, and *Guion* v. *Terre Haute, etc., Traction Co.* (1924), 82 Ind. App. 458, 465, 143 N. E. 20. The appellee's railroad on which appellant's decedent was killed was operated over its private right of way from Newcastle to Indianapolis. Interurban electric railroads operated in this manner

have uniformly been held to be included in the term railroads and we hold that the statute in question here applies to all railroads, including electric interurban railroads.

This is an action for damages on account of the death of a human being, and is predicated upon §292, Burns 1926, which is as follows: "When the death of one is caused by the wrongful act or omission of another, the personal representative of the former may maintain an action therefor, against the latter if the former might have maintained an action, had he or she (as the case might be) lived, against the latter for an injury for the same act or omission. The action shall be commenced within two years. The damages can not exceed ten thousand dollars; and must inure to the exclusive benefit of the widow or widower (as the case may be), and children, if any, or next of kin, to be distributed in the same manner as personal property of the deceased." The plaintiff brings her complaint squarely within the provisions of the foregoing section of the statute.

In the instant case, death is alleged to have resulted from the injury to the decedent's person caused by the wrongful act or omission of appellee upon appellee's railroad and the Act of 1929, p. 461, §327, Burns Supp. 1929 says: "An action against a railroad . . . for an injury to person or property upon the railroad . . . may be brought in any county through or into which such railroad . . . passes; and an action may be commenced against a receiver without obtaining the consent of the court appointing such receiver; and the summons may be served in any county of the state." A reasonable construction of this Act makes it applicable in cases where the injury results in death, as well as where it results in personal injuries short of death.

This action was properly brought in Marion County.

The records show that the appellees filed a motion for a change of venue from Marion County, and the cause, by agreement, was sent to Shelby County, and therefore the appellee waived any right he might have had to object to the jurisdiction of the Shelby Circuit Court over his person. *Judah* v. *Trustees* (1864), 23 Ind. 272, 275; *Aurora Co.* v. *Johnson* (1874), 46 Ind. 315, 321; *Center Twp.* v. *Board of Commissioners of Marion County* (1887), 110 Ind. 579, 583, 10 N. E. 291.

There can be no question as to the fact that it was not necessary to obtain the consent of the court that appointed the receiver to begin the action. The statute, as set out in clear and express language, says that: "An action may be commenced against a receiver without obtaining the consent of the court appointing such receiver."

The appellee further contends that the allegations of the complaint are not sufficient to charge actionable negligence. The complaint is lengthy, covering 12 pages of appellant's brief, and need not be set out here. After formal allegations concerning the receiver and the railroad company's business, a detailed description of the geographic and topographic features of the scene of the accident, designed to show the dangerous character of the crossing, and the fact that the collision occurred at 8:30 P. M., October 14, 1927, appellant alleged that the "defendant was guilty of negligence proximately causing said collision and the death of John George Watson." Then, in detail and at considerable length, the following items of negligence are alleged: failure to sound any warning signal; reckless and dangerous speed of 70 miles per hour; failure to provide the electric car with sufficient lights or a headlight, that travelers might know of the car's approach; failure to provide an electric flash signal, working

gates, watchman, or a bell or gong at the crossing, which was perilous and hazardous, and near a large city where there was heavy traffic; failure to equip the electric car with sufficient brakes; failure to equip the car with proper headlight or whistle as required by an order of the Public Service Commission. The concluding averment is "that by reason of said negligent acts aforesaid said defendant negligently ran and operated its said interurban passenger car against said trailer in which said John George Watson, deceased, was riding as aforesaid, thereby negligently killing said . . . Watson, and . . . that said surviving wife and sons of said decedent has (have) been damaged in the sum of $10,000."

Appellee says: (1) the allegation that there were no gates, bell, watchman or other devices at the crossing was not an allegation of actionable negligence, because no order of the Public Service Commission requiring the same was alleged; (2) that the allegation regarding the failure to provide a headlight in compliance with the order of the Public Service Commission omitted "the necessary element of proximate cause" because "there was no allegation that if the headlight had been of such requirement the motorman could or would have seen decedent in time to have avoided the collision"; and (3) that the allegation that the motorman did not sound his whistle when the car was a distance of not more than 100 rods nor less than 80 rods of the crossing was not sufficient because it did not "allege facts to show that if the warning had been given he (plaintiff's decedent) would not have been injured."

Regarding appellee's contentions (2) and (3), we consider that the allegation "by reason of those negligent acts . . . said defendant negligently ran . . . its . . . car against said trailer . . . thereby killing said . . . Watson" is sufficient.

The meaning is perfectly clear and is amply sufficient without the tautological averments insisted upon by appellee, viz: that if the headlight had been sufficient the motorman would have seen decedent, etc., and that if the whistle had been blown the decedent would not have been injured. "In construing a complaint where a demurrer is interposed it will be deemed sufficient whenever the necessary allegations can be fairly gathered from all the averments . . . and facts . . . impliedly averred will be given the same force as if directly stated." *Fauvre Coal Co.* v. *Kushner* (1919), 188 Ind. 314, 123 N. E. 409, 413; *Cleveland, etc., Ry. Co.* v. *Gillespie* (1933), 96 Ind. App. 535, 173 N. E. 708.

Supporting the first contention (1) set out above, appellee cites *Ohio Electric Co.* v. *Evans* (1922), 77 Ind. App. 669, 134 N. E. 519, to the effect that there is no duty resting upon a railroad company to install and maintain a signal device at a crossing in the country to warn travelers on the highway of the approach of cars, unless the erection of such a device had been ordered by the board of county commissioners or by the Public Service Commission. The erection of such device had not been ordered at the crossing where this collision occured, but, as was pointed out in *Pittsburg, etc., Ry. Co.* v. *Tatman* (1919), 72 Ind. App. 519, 533, 122 N. E. 357, 361: "If ringing of a bell or other signal is reasonably necessary to warn travelers, so that they may avoid danger, then such signal as is reasonably necessary should be given, whether the same is or is not required by statute or ordinance." See also 52 C. J. 200, note 30, 201, note 63, 203, note 96.

In *Cleveland, etc., Ry. Co.* v. *Starks* (1910), 174 Ind. 345, 350, 92 N. E. 54, it was said:

"A railway company may not operate its trains over the crossing of a public street or highway in a populous . . . community [where many per-

sons are passing back and forth on such street or highway] at as high a rate of speed as in a thinly settled community where people are only occasionally crossing its track. The use of a crossing by the public, and other attendant circumstances, may impose upon the company the duty of exercising care proportionate to the known danger, and hence in a greater degree of care for the safety of the public than is required at some other crossing not so perilous and in less frequent use by travelers which at all events is only ordinary care. In all such cases the public may be safeguarded by the erection of gates or automatic signals, or by stationing a flagman or taking other precautions, without regard to the speed of passing trains."

In the case at bar the complaint alleges that North Emerson Avenue at the scene of the accident crosses not only the appellee's right of way, but crosses the right of way of the C. C. C. & St. Louis Ry. Company and also crosses two other public highways (one south of appellee's right of way and one north of the C. C. C. & St. Louis right of way) ; that adjacent to and immediately south and east of crossing and appellee's tracks there was a high growth of weeds, small trees, briars and other vegetation that obstructed the vision to the east (from which direction appellee's car approached) ; that immediately south of the crossing there are several residences with windows from which, on the night of the collision, lights showed which resembled the lights of an automobile; that the said crossing was, by reason of such facts, exceptionally deceptive, hazardous and perilous, all of which was known by the appellee; that it was near a large city or metropolis where traffic by automobile is unusually heavy by persons going from one designated state road to another; and that there is in common use by both electric and steam railroads certain well known and well recognized automatic and mechanical devices of electric or automatic operation in the nature of flash signals, electric bells and gates,

which warn travelers of the approach of cars or trains, which could have been installed and operated without unreasonable expense; that no such device of any kind or character was placed at the crossing and that if such warning signals had been installed the collision herein described would have been avoided and said John George Watson would not have been killed.

The plaintiff's complaint, as we have seen, alleges numerous acts of negligence. The facts alleged, and just reviewed, concerning the failure of the appellee to provide proper warning signals, bells or gates may be properly received and considered in determining whether appellee's operation of the train under the attending circumstances, was negligent. Note 60 A. L. R. 1104. If a railroad company operates a car or train at a very high rate of speed over a crossing which is so hazardous by reason of the topography and congested traffic that some special warning signal, bell, etc., is reasonably necessary, and in doing so injures one who was not himself negligent, then actionable negligence may, in such case, be alleged not only with regard to the speed at which the train was operated, but also in the manner of operating the train under the conditions surrounding the particular crossing by reason of the company's failure to install a proper warning signal.

"Although the track of a railroad is of itself a warning danger . . . it is the duty of the railroad company to exercise ordinary care at a crossing, by adopting a reasonably safe and effective mode, commensurate with the danger at the particular crossing, of warning travelers of the approach of trains. . . . The protection the railroad company should give at the crossing may depend upon the number of trains and people using the crossing, thus the protection rendered at a crossing in a populous city should be

greater than at ordinary crossings in the country." 52 C. J. 199, 200. "When the subject is regulated by statute it may not be difficult, in a particular case, to determine whether the railroad company has performed its duty in that regard to the public. But where there is no statute providing in what mode the necessary warning shall be given . . . the question of negligence must be determined by the special circumstances of each case. . . . If a railroad crossing is especially dangerous to travelers, on account of its locality or mode of construction or because the track is curved or the view obstructed, the railroad company must exercise such care and take such precautions as the dangerous nature of the crossing requires, and failing in this it is guilty of negligence." 22 R. C. L. 988-990.

It cannot be said that railroads owe the public the duty of maintaining flashing signals or similar warnings at all ordinary crossings in the country where there is no unusual danger or extraordinary hazards, although modern conditions of traffic both as regards the speed of trains on railroads and the large number of automobiles and trucks on the main highways are constantly increasing the danger and hazards of such crossings.

Whenever a railroad crossing is for any reason particularly dangerous, it is not a question for the jury to decide whether or not a railroad company should provide signalling and safety devices at any particular crossing, but the jury may consider the fact that there were no devices or watchmen together with all the other circumstances surrounding the crossing such as the near situation of houses, trees, vegetation and the like, and the frequency with which travelers pass over the crossing in order to determine whether or not the operation of the car in the manner

and at the speed that it was operated, was negligent. *T. H. I. & E. Traction Co.* v. *Phillips* (1921), 191 Ind. 374, 132 N. E. 740.

We hold that the complaint is sufficient, and the demurrer should have been overruled.

The former opinion of Martin, J., is hereby modified as above set out and petition for rehearing denied.