FANNY WILCOX, Administratrix, &c., of JOHN WIL-
COX, Deceased, v. THE ROME, WATERTOWN, AND
OGDENSBURGH RAILROAD COMPANY.

*Contributory Negligence—Failure of deceased to look and to listen for train.*

It is negligence bordering upon rashness for a person to walk upon a rail-
road track without availing himself both of his sight and hearing, to ascer-
tain the approach of a train of cars from behind as well as in front; and
when the deceased has been guilty of such negligence, the company will not
be liable for injuries received, when they might have been avoided by the
exercise on the part of the deceased of such ordinary caution.

Appeal from judgment of General Term of Fifth District.

Court Street is one of the principal thoroughfares leading into
the village of Watertown, from the country to the public
square and business centre of the town. The Defendant's road
crosses the street at right angles, near the bridge across the
Black River. There are two depots in the village; one in the
neighborhood of half a mile above the crossing in the rear of
the Woodruff House, and the other about the same distance be-
low. They are known as the upper and lower depots. The
crossing is about half-way between the two depots.

The action was brought to recover damages for the negligence
of the Defendant, in causing the death of the Plaintiff's intestate.
It was tried at the Jefferson County Circuit. The Plaintiff's
intestate was passing in front of a crossing in Defendant's road,
on or near the place where it crosses Court Street. In passing
down the track from the Woodruff House, the Court Street cross-
ing is in perfectly plain sight for some seventy or eighty rods,
so that a person on or near the crossing could see distinctly for
that distance, there being nothing whatever to obstruct the view.
The deceased, at the time of the accident, had been at a lime-
kiln near there, for a pail of mortar. He left the lime-kiln,

along the path leading up and west, along the track, toward Court Street, on his way home, where he and his family had resided for many years, near the lower depot.

The last that was seen of the deceased, until the instant the engine struck him, he was crossing the cattle-guard, at the south end of it, west of Court Street, where the path leaves the Court Street crossing. Engines in the business of the road are constantly running across it, and at all hours of the day and night, and night trains, regular trains, extra trains, and shifting trains are passing in along the track, night and day, to the depot. It came around the curve down to and across the Court Street crossing at a speed of from twelve to fifteen miles an hour.

There was evidence to show that the whistle was not sounded nor the bell rung as it approached the crossings there. The testimony was conflicting as to the ringing of the bell and sounding of the whistle, the Plaintiff's witnesses swearing that they did not hear it although near by, and the Defendant's testifying that the bell was rung and the whistle sounded. About twenty feet from the ditch, or cattle-guard, it struck the deceased, and he died in about thirty-six hours. The engine came up behind him, and carried him some forty-five feet from where it struck him. He was, when struck, some twenty-five feet inside of the west line of the street or highway. A shifting engine was going in the opposite direction. The engineer, the fireman, and a boy who got upon the engine at the upper depot, were on the engine at the time. There was no signal-man on the crossing, and no watch or lookout was kept by those on the engine, to see whether the crossing was clear. The deceased could have been seen from the engine perfectly plain for some sixty or eighty rods, had a lookout been kept.

The engineer was on the opposite side of the engine, in a place where, as he swore, he could not see the track six feet ahead of the engine; but on the other side of the engine the deceased would have been in plain view. The fireman had left his place, and went to piling wood in the tender. The boy had nothing to do with the engine, having merely jumped on for a ride between the

depots.   When the engine struck the deceased, he was within the bounds of the street or highway.

At the close of the Defendant's argument the Defendant's counsel moved for a nonsuit, on the ground that the deceased was guilty of negligence, which was refused, and exceptions taken.   Some other questions were raised, not material to be stated.

The jury found a verdict for the Plaintiff, and on appeal, judgment was affirmed at General Term, and the Defendant appealed to this Court.

*S. T. Fairchild* for Appellant.

*Hammond, Winslow & Williams* for Respondent.

MILLER, J.—The main question which we are to determine in this case is, whether the deceased was guilty of negligence, which contributed to the injury that caused his death.

At the time when the occurrence took place, he was in the public highway, where he had a perfect right to be, for the purpose of travelling, or of crossing the track.   He was familiar with the locality, having lived for some time in the neighborhood, and probably was acquainted with the times for the running of the trains.   It was not the time for any regular train to pass, but engines and trains were passing at all times of the day and night. The engine was running at a speed of fifteen miles an hour, and another engine, called a shifting engine, had gone in an opposite direction to the one which ran on the deceased, of which fact the deceased must have been advised.

The evidence does not show whether the deceased, before attempting to cross, looked up and down the track to ascertain whether a train was coming, but it appears the engine or train was in plain sight, as he could see for a distance of seventy or eighty rods.   It is a fair and reasonable presumption, arising from all the circumstances attending the transaction, that he did not look, for, had he done so, he must have seen the engine approaching, and his life would have been saved.   I think, therefore, that we must assume that he did not look, and in failing to do so, he neglected

a plain and imperative duty, and was guilty of negligence which precludes a recovery.

A traveller, in crossing a railroad track, is bound to exercise at least ordinary sense, prudence, and capacity, and this requires that he should use his ears and eyes, so far as he has opportunity to do so.    None of the cases adjudicated exonerate him from thus employing his faculties ; and those which are relied upon as sustaining a contrary doctrine are exceptional, and present more strong and controlling facts, which prevented the party from hearing or seeing the train, so far as I am able to discover.    The later cases, which are supposed to uphold the doctrine that a party is exonerated from the charge of negligence who does not look, only go to the extent of holding that a party is not in law guilty of negligence in not seeing the approaching train when crossing a railroad track, when circumstances existed which tended to show that the sight was obstructed, or to render it at least doubtful whether the party was in fault, so that it was proper for the jury to pass upon the question of negligence.

In examining all the cases bearing upon the question, I refer briefly to a few recent cases, which are considered as applicable and decisive.    In Brown *v.* The N. Y. Central R. R. Co. (32 N. Y. 597) a train had passed, and the Plaintiff had stopped for it.    A single car had followed at a distance, and he had waited for that.    Other cars followed which were not anticipated, and of which the Plaintiff had no notice or warning.    It was held that he was not guilty of negligence, in the eye of the law, in not anticipating the detached cars which followed in the rear of the train that had passed.

In Stillwell *v.* The N. Y. Central R. R. Co. (34 N. Y. 29) the same facts existed as in the case last cited, and the same rule was applied.

In Beisiegal *v.* The N. Y. Central R. R. Co. (Id. 622) there were freight cars on one of the tracks, which interrupted the Plaintiff's vision, and prevented his seeing the engine approaching, and it was held that he was in law not guilty of negligence.

In Ernst *v.* The Hudson R. R. R. Co. (35 N. Y. 9) it was doubt-

ful whether the deceased did not look up and down the track as far as he could see, and whether if he had done so he could have seen the approaching train; and also whether he was not misled by the failure to show the flag, in accordance with previous custom. It was conceded that the question of negligence of the deceased was for the jury.

It will be seen that some of the authorities cited present a case where the person injured or killed had a full opportunity to see the train as it was running along, and that there were obstructions to the view which is not the case here.

It is said that the deceased had no occasion to look behind him, as the engine from which he might reasonably expect danger at the time was in an opposite direction, that his attention would naturally be directed there, and that it was not within an hour for any regular train to pass.

There was evidence to show that trains were passing without regard to the time-table, and every one conversant with the operation of railroads is aware that extra trains are often run out of the usual order, and without regard to regularity, so as to render it unsafe to pass a crossing during the day-time without taking an observation to see whether a train is then likely to pass.

It was remarked by Denio, J., in Wilds *v.* The H. R. R. Co. (29 N. Y. 315): "No one can be secure against being met by an engine, except by ascertaining by his own senses that no train is approaching, in either direction, within a distance which will endanger his safety." There is much force in this suggestion; and it would, in my opinion, present a very imperfect and unsafe protection to a traveller to act only upon his knowledge of the time-table, or upon the fact that an unusual train had passed in an opposite direction, and therefore none other could be expected. The reason urged, I think, furnishes no sufficient excuse for the failure of deceased to use his faculties, and for neglecting to exercise a proper degree of vigilance and care.

It is said that as no bell was rung or whistle sounded, the deceased was not negligent in not hearing the train as it came near the crossing. The testimony on this subject was conflicting, and

we must therefore assume that these signals were not given. Does that admission relieve the deceased from the charge of negligence, which contributed to produce the disastrous result which followed?

In Ernst v. The H. R. R. R. Co. (35 N. Y. 9), before cited, the opinion of one of the Judges holds, that the omission of the customary signals is a breach of duty, and an assurance to the traveller that no engine is approaching from either side within eighty rods of the crossing, and that he may rely on such assurance without incurring the imputation of a breach of duty to a wrong-doer. Upon trial of the case a verdict was rendered in favor of the Plaintiff, and on an appeal to this Court the judgment was affirmed. Several of the Judges placed their decisions upon other and different grounds than the failure to give the necessary signals, and I do not understand that a majority of the Court held that such neglect was an assurance of safety which relieved the wayfarer, who did not look, from the imputation of negligence.

In Beisiegal v The N. Y. Central R. R. Co. (34 N. Y. 622) the same doctrine is substantially reiterated, in one of the opinions, which was laid down in the Ernst case, but the case was not decided entirely upon any such ground. The Judge who wrote the opinion concedes " that it is the duty of a person who is about to cross a railroad track to make an observation before crossing;" but he considers him relieved from the charge of negligence when the vision is constantly obstructed by intervening obstacles, where it is often very difficult to see up and down the railroad track. He also assumes that " when a man on foot reaches a point near the crossing, and listens and hears no signal or warning, he is not guilty of negligence for attempting to cross the track in a case where he cannot see up and down, by reason of obstructions."

As we have already seen, the decision of each of these cases depended very much upon the fact that the vision of the person killed or injured was obstructed by surrounding objects, and hence they cannot be regarded as settling definitely the principle, that the neglect to give the signal required creates an exemption

from liability where he fails to look, and has the means of seeing if he does thus look.

In Sheffield *v.* The R. & S. R. R. Co. (21 Barb. 339) the Plaintiff was in plain sight of the track, with nothing to obstruct his view; and it was held that it was inexcusable negligence which contributed to the injury which precluded a recovery. There was evidence on both sides as to the ringing of the bell; but the verdict being in favor of the Plaintiff, it settled the question that no signal was given.

In Brooks *v.* The Buffalo & Niagara Falls R. R. Co. (25 Barb. 600) it was assumed that no bell was rung, and decided that a person who crosses a railroad track in ignorance of the approach of a train, when the danger may be easily seen by looking for it, is fairly chargeable with negligence. This case was affirmed on appeal to this Court, and it was held, that an attempt to cross a railroad track without looking up and down to see if a train is approaching, is such an act as a man of ordinary prudence would hardly be guilty of. (See 27 Barb. 532, note.)

In Dascomb *v.* The Buffalo & State Line R. R. Co. (27 Barb. 221) it was held, that to authorize a recovery against a railroad company for damages sustained by reason of the neglect of the agents to ring a bell or sound a whistle, that it must appear that such neglect was the sole cause of the damage; and if the Plaintiff was himself guilty of negligence which contributed to the injury, he cannot recover, notwithstanding this omission of duty by the company.

In Mackey *v.* The N. Y. C. R. R. Co. (27 Barb. 528), although the fact whether a signal was given was in doubt, the jury found against the Defendant, and a new trial was granted on account of the Plaintiff's negligence.

In Steves *v.* The Oswego & Syracuse R. R. Co. (18 N. Y. 422), this Court held that it was not enough to enable the Plaintiff to recover, that he established that the Defendant neither rang the bell nor sounded the whistle, when the Plaintiff himself was guilty of negligence in not seeing or hearing the cars; and a nonsuit on the trial was sustained.

In Mackey v. The N. Y. C. R. R. Co. (35 N. Y. 75) the liability of the Defendant was put upon the ground that the company had obstructed the view of travellers on the public highway, by piling wood, so that the approach of a train could not be seen at the crossing until the traveller was on the track.

In Renwick v. The N. Y. C. R. R. Co. (36 N. Y. 132) it appeared that the Plaintiff had stopped and listened from four to six rods from the track, and hearing no signal, and seeing no indication that the train was approaching, he started his horses and continued looking until he reached the track, and then turning his eyes to the right, found a train upon him ; and the judgment for the Plaintiff was upheld.

The effect of the cases cited is to sustain the principle, that when the negligence of the party injured or killed contributed to produce the result, he cannot recover, and that the omission of the company to ring the bell or sound the whistle, near the crossing of a highway, does not relieve the person who is about to pass over the highway from the obligation of employing his senses of hearing and seeing, to ascertain whether a train is approaching. They are entirely applicable to the case before us, and in the absence of any authority which holds a contrary doctrine, where the naked question is presented which now arises, I think they are decisive and controlling.

It is very plain that the deceased could have seen the approaching train had he looked in that direction. There were no obstructions to his vision, and no occasion to divert his attention, which excused him from observing. He recklessly and carelessly neglected to exercise that prudence and care which the circumstances demanded, and exposed himself needlessly and unnecessarily to danger and to certain death. His negligence was inexcusable, and as actions of this kind are founded upon the principle that the party claiming damages must not contribute to produce the injury, it is difficult to see how any negligence of the party inflicting the injury can obviate the difficulty.

To hold that a party is excused when he has been careless, because the other party has failed to give the accustomed signals, or

for any other act of negligence on his part, strikes at the principle upon which such actions are based. Such a rule is not sustained by any of the adjudicated cases, and from the consideration I have bestowed upon the subject I am not prepared to uphold such a doctrine.

The motion for a nonsuit, in my judgment, was improperly overruled; and for this error the judgment should be reversed, and a new trial granted, with costs to abide the event.

GROVER, J.—The only question necessary to examine in the present case arises upon the exception taken by Defendant's counsel to the denial of his motion for a nonsuit.

This motion was made upon the following, among other grounds: That the intestate was guilty of negligence contributing to the injury received by him. It is unnecessary to consider any of the other grounds. The testimony relating to this was in no essential particular conflicting.

It was proved that in the daytime the deceased was walking upon or by the side of the track of the Defendant's road, in the village of Watertown, toward Court Street; that after he had got within the bounds of the street, as settled by the verdict, and within about twenty feet of the travelled portion thereof, he was struck by an engine running upon the Defendant's road, at the rate of twelve or fifteen miles per hour, in the same direction the deceased was walking, and received thereby an injury causing his death; that this engine could have been seen by the deceased where he was walking, and when he was struck, for a distance of fifty or sixty rods, had he looked behind him along the track; that there was nothing to obstruct the view for that distance.

The only question in the case, therefore, necessary to consider is, whether it was negligence in the deceased to expose himself in that dangerous position, without even looking along the track, behind as well as before him, to see if there was a train approaching. That he did not look is established by the fact that if he had, he must have seen the train in ample time to have enabled him to step off from the track, and thus have avoided the danger, which he failed to do.

There was no explanation of the conduct of the deceased, no evidence of any other train in motion in the vicinity, or any other cause whatever assigned for diverting the attention of the deceased from his own safety.

Under such circumstances, to walk along or stand upon a railroad track, without availing himself of the sense of sight, as well as hearing, to ascertain whether there was danger in such position, is not only negligence, but borders upon rashness.    It is no answer to say that this engine was not moving at that point upon the time of any regular train.    If the deceased was sufficiently acquainted with the business of the Defendant as to know the time the different trains and engines passed over the road, or portions of it, at other times—that it was necessary for them so to do, in order to avoid the regular trains—it would be the grossest carelessness for one to place himself upon the track, without at all attending to his safety, relying upon the fact that it was not the time for the regular train to pass over that portion.    That this negligence of the Defendant contributed to his injury, is manifest from the fact, that had he not been guilty of it, he would have known of the approach of the engine, and have avoided the collision by stepping off the track.    If the deceased had ordinary hearing, it is almost inconceivable that he failed to hear the train, whether or not the bell was rung, in season to have avoided the danger, unless his attention was thoroughly engrossed by something foreign to his own safety in the position in which he had placed himself.

He certainly could not have been relying upon any assurance of the Defendant that no train was approaching, from their failure to ring the bell, for the reason that had he listened enough to make sure that no bell was ringing within eighty rods behind him, he must have heard the noise of the engine in season to have avoided the danger by leaving the track.    All the authorities agree that no recovery can be had when the negligence of the party injured has contributed to the injury.    The cases have been so often reviewed that a repetition would be superfluous.

The Judge erred in not granting a nonsuit on the ground of the

negligence of the deceased.    The judgment appealed from must be reversed, and a new trial ordered, costs to abide the event.

Reversed, and new trial.