GEORGE F. AVERY, Respondent, v. NEW YORK, ONTARIO AND WESTERN RAILWAY COMPANY, Appellant.

Negligence — duty of person riding a bicycle in approaching a railroad crossing — erroneous refusal to charge.

1. Negligence on the part of a railroad company, in omitting to give warning of the approach of trains, by signals or by a flagman, does not excuse persons from exercising ordinary care and prudence on their part, when crossing its tracks.

2. On the trial of an action to recover for injuries received by plaintiff, who was struck by a handcar while riding his bicycle over the tracks of defendant, where the defense was contributory negligence, it was error to refuse defendant's request to charge that "It is the duty of the person riding a bicycle upon a highway, in approaching a railway crossing, to keep the bicycle under complete control and be prepared to stop."

3. On examination of the facts, held, that as matter of law, the plaintiff was shown to have contributed to the accident, through a failure to observe the ordinary rules, which the common experience and common sense of men teach them their conduct should be governed by, when approaching a railroad crossing.

Avery v. N. Y., O. & W. Ry. Co., 142 App. Div. 919, reversed.

(Argued May 21, 1912; decided June 4, 1912.)

APPEAL from a judgment of the Appellate Division of the Supreme Court in the third judicial department, entered January 9, 1911, affirming a judgment in favor of plaintiff entered upon a verdict.

The nature of the action and the facts, so far as material, are stated in the opinion.

Charles L. Andrus and J. T. Durham for appellant. The plaintiff was grossly negligent in releasing his brake, and so relinquishing control of his bicycle, when he was still on a steep descent, about eighteen feet from the foot of the grade, and was guilty of contributory negligence as matter of law. (Coleman v. N. Y. C. R. R. Co., 98 App.

Div. 349; *Havens* v. *Erie Ry. Co.*, 41 N. Y. 298; *Cullen* v. *D. & H. Co.*, 113 N. Y. 667; *Spencer* v. *N. Y. C. & H. R. R. R. Co.*, 123 App. Div. 789; *McGrath* v. *N. Y. C. R. R. Co.*, 59 N. Y. 468; *McGrath* v. *N. Y. C. R. R. Co.*, 63 N. Y. 522; *Dolfini* v. *Erie Ry. Co.*, 178 N. Y. 3; *Keller* v. *Erie Ry. Co.*, 183 N. Y. 70; *Young* v. *N. Y., L. E. & W. R. R. Co.*, 107 N. Y. 505; *Woodard* v. *N. Y., L. E. & W. R. R. Co.*, 106 N. Y. 375.)

*James Moore* for respondent. Plaintiff cannot properly be charged with contributory negligence. (*Ernst* v. *H. R. R. R. Co.*, 35 N. Y. 9; *McNamara* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 650; *Kane* v. *N. Y. C. & H. R. R. R. Co.*, 132 N. Y. 160; *Palmer* v. *N. Y. C. & H. R. R. R. Co.*, 112 N. Y. 234; *Wilber* v. *N. Y. C. & H. R. R. Co.*, 8 App. Div. 138; *Robinson* v. *N. Y. C. & H. R. R. R. Co.*, 128 App. Div. 667; *Ball* v. *A. R. R. Co.*, 4 N. Y. Supp. 769.) The court instructed the jury properly as to the vigilance required of the plaintiff in approaching this crossing. (*Kane* v. *N. Y., N. H. & H. R. R. Co.*, 132 N. Y. 160; *McNamara* v. *N. Y. C. & H. R. R. R. Co.*, 136 N. Y. 650; *Palmer* v. *N. Y. C. & H. R. R. R. Co.* 112 N. Y. 234; *Ernst* v. *H. R. R. R. Co.*, 36 N. Y. 9.)

GRAY, J. The plaintiff, while riding his bicycle over the tracks of the defendant, in the city of Oneida, was struck by a handcar and received injuries, for which this action was brought. He recovered a verdict and the judgment thereon has been affirmed by the Appellate Division, but not by unanimous vote. Upon this appeal by the defendant, we assume that there was evidence, upon which the jury might have found the defendant negligent, and we disregard certain assignments of errors in rulings by the trial court, as without substance. The question to be discussed upon the evidence is whether the plaintiff did not contribute to the result by his own

negligent conduct and the discussion will be based upon his statements of the facts.

The defendant's railroad crosses Seneca avenue, in the city of Oneida, with its main track and with a side track, practically, in a northerly and southerly direction. The plaintiff, early on a clear morning in August, was proceeding to his work upon his bicycle and was upon the sidewalk of Seneca avenue. Seneca avenue crosses the defendant's railroad nearly at right angles and the plaintiff was coming from the west. There was a descent in the grade of the street, until within a few feet of the tracks; of which the main track, upon which the accident happened, was the easternmost. The plaintiff was familiar with the crossing and was proceeding at a rate of from eight to ten miles an hour. His bicycle had no mechanical brake upon it; but, by placing his foot, or toe, back of the fork of the frame and on the tire of the front wheel, he was able to exert the most effective control of the movement. As he testified, he could stop "within two feet," "almost instantly." Proceeding, thus, with his left foot upon the front wheel, down the walk, eastwardly, he reached a point within from 22 to 24 feet of the first of the tracks. He saw no flagman at the crossing and he heard no train. He looked to the south and saw no train He, then, took his foot from the wheel and placed it upon the pedal; in which position his progress was more rapid. Proceeding a few feet further, he saw a handcar coming from the north, at a rate of eight or nine miles an hour, on the main track, on which were several workmen. The plaintiff said: "I tried to back pedal and swung to the right in trying to escape the car. * * * I left the sidewalk between the rails of the first track. I went over one rail. I tried to keep to my wheel * * * and I went with my wheel over the first rail of the next track * * * and there I was struck * * * and went down with my bicycle." At the point where he released his foot from the tire of the

wheel, which was from 22 to 24 feet from the first and from 33 to 34 feet from the second of the defendant's tracks, the descent of the path was continuing for 16 to 18 feet before it became level. The view to the north upon the defendant's road was cut off for some distance by an embankment; so that, while the plaintiff could see to the south, his vision to the north, from which the car was coming, was obstructed, until he reached a point within about six or seven feet of the first track. The plaintiff, when asked why he released the control of his wheel when he did, said: "Because I thought my way was clear and that there was no train or anything coming. There was no flagman out there." He stated that when he "released the brake he put his heft on the right pedal and went forward more rapidly." When asked: "Were you going too fast to jump off your wheel?", he answered, "Yes, in going that distance. Of course, the effect of releasing the brake is naturally to accelerate the speed of the machine. I know that to be so. This was quite a sharp decline there, just a trifle less than 8 inches in 10 feet."

According to the plaintiff, he approached the crossing upon his bicycle at a rate of speed of from eight to ten miles an hour and, when within 16 to 18 feet of the level, when he could see but in one direction over the defendant's road, he released a control of his wheel, which would have enabled him to stop within a space of two feet. Naturally, and admittedly, the speed of his progress was increased; so that, when he came near to the tracks, where the view either way was open, he was unable to stop. Indeed, such was his rate of speed that it carried his bicycle over a rail of the main track. What was the question of fact? It was whether the plaintiff acted as a prudent man should act, when approaching such a place of danger, under the circumstances stated. I think there can be but the one answer, that he was heedless of those ordinary precautions, which were within his

ability to take and which should, reasonably, be expected of every one in such a situation. There was no question for the jury to pass upon. As matter of law, the plaintiff was shown to have contributed to the accident, through a failure to observe those ordinary rules, which the common experience and common sense of men teach them their conduct should be governed by, when approaching a railroad crossing. The flagman's absence from the crossing did not dispense with the necessity of vigilance on the plaintiff's part. The rule has long been settled that negligence on the part of the railroad company, in omitting to give warning of the approach of trains, by signals, or by a flagman, does not excuse persons from exercising ordinary care and prudence on their part, when crossing its tracks. (*Wilcox* v. *Rome, W. & O. R. R. Co.*, 39 N. Y. 358, 365; *McGrath* v. *N. Y. C. & H. R. R. R. Co.*, 59 id. 468, 472; *Cullen* v. *D. & H. Canal Co.*, 113 id. 667; *Wallace* v. *Central Vermont R. R. Co.*, 138 id. 302, 305.) It is a rule of reason; for it simply requires of travelers on the highway that they shall be attentive to their safety under circumstances, which admonish them of the possibility of injury. They should be vigilant in the use of their faculties, upon such an occasion; as well because of being out of their ordinary surroundings, and in a place of some danger, as in order to guard against the result of some neglect on the part of the corporate servants. The omission on the part of the railroad company of some usual act, purposed to give warning to travelers on the highway may tend to throw one off his guard; but it does not justify the non-observance of ordinary care on his part. We have held, where gates are maintained at highway crossings, that, however their being open may be deemed to furnish an affirmative assurance of safety to the traveler, nevertheless, it does not dispense with the necessity of vigilance on his part. (*Scaggs* v. *D. & H. Canal Co.*, 145 N. Y. 201, 207.)

I think that the defendant's motion for the dismissal

of the complaint, on the ground of the plaintiff's contributory negligence, should have been granted and the exception to its denial was well taken.

At the close of the evidence, the trial court was requested by the defendant to charge the jurors that "it is the duty of the person riding a bicycle upon a highway, in approaching a railway crossing, to keep the bicycle under complete control and be prepared to stop." This request was refused and I think the ruling was grave error. There was as much propriety in that instruction as though it had been requested with respect to the driving of a horse; and how can there be any doubt as to the need of control being as great in the one case as in the other? The rider of a bicycle should have it under full control and, especially, when the circumstances are such as, within human probability, to make his control a reasonable assurance against danger, as well to himself, as to others. A person driving a horse, or driving a bicycle, would, in neither case, be required to get down at a railroad track, in order to look before crossing; for that would be requiring extraordinary care, rarely exercised by the most prudent. But he must approach with ordinary care and with horse, or wheel, under such complete control, as to permit of stopping within a reasonable time, if by so doing injury could be averted.

I advise that the judgment be reversed and that a new trial be ordered; with costs to abide the event.

CHASE and COLLIN, JJ., concur; CULLEN, Ch. J., and WILLARD BARTLETT, J., concur on second ground stated in opinion; HISCOCK, J., concurs in result; VANN, J., absent.

Judgment reversed, etc.