MARY A. HORTON and Another, as Administrators, etc., of JAMES
W. HORTON, Deceased, Respondents, v. THE NEW YORK CENTRAL
RAILROAD COMPANY, Appellant.

Third Department, June 19, 1923.

Railroads — action for death caused by collision between automobile
and train at grade crossing — decedent was familiar with crossing —
fact that gates were open did not relieve decedent from duty of having
automobile under control — failure to have automobile under control
was contributory negligence — Railroad Law, § 53-a, applied.

The plaintiff's intestate, who was killed at a grade crossing in a collision between
his automobile and a train of the defendant, was guilty of contributory negli-
gence, since he did not reduce the speed of his automobile to a safe limit upon
passing the disc sign as required by section 53-a of the Railroad Law and did
not proceed cautiously and carefully with the automobile under complete
control.

The requirement that the speed of a vehicle must be reduced to a safe limit means
that it must proceed at such a speed as will permit the driver to discern an
approaching train and stop his automobile before it is within the danger zone.

The fact that the gates at the crossing in question were up did not excuse the
decedent from obeying the statute or relieve him of the necessity for vigilance
as he approached the track, since he was familiar with the crossing and with
the rule that the gates would not be operated on Sunday, which was the day
on which the accident happened.

APPEAL by the defendant, The New York Central Railroad
Company, from a judgment of the Supreme Court in favor of the
plaintiffs, entered in the office of the clerk of the county of Albany
on the 27th day of October, 1922, upon the verdict of a jury for
$15,000, and also from an order entered in said clerk's office on
the 3d day of November, 1922, denying defendant's motion for a
new trial made upon the minutes.

*Visscher, Whalen, Loucks & Murphy* [*Robert E. Whalen* of coun-
sel], for the appellant.

*J. S. Carter,* for the respondents.

VAN KIRK, J.:

On Sunday, May 29, 1921, about nine-fifteen A. M., the deceased,
while driving southerly in a motor car, was killed at a grade crossing
of defendant's road which runs east and west. Upon a former
appeal we decided that defendant's negligence was for the jury
(202 App. Div. 428). The evidence on the second trial is not
materially changed in this respect. The vital issue is the con-
tributory negligence of the deceased; and this question involves
the construction of the so-called " Disc Sign Act " (Railroad Law,

§ 53-a, as added by Laws of 1919, chap. 438). The disc sign, of the size and having the markings detailed in the statute, is to be furnished by the railroad company and is to be installed by the municipality or political subdivision, or, in case of a State road, by the State Commission of Highways, in a conspicuous position at the exact location " determined by the Public Service Commission " and 300 feet from the crossing as near as may be. This statute recognizes that the public is directly interested in eliminating, so far as possible, the dangers of grade crossings; it places duties in this respect upon those charged with the maintenance of the highways. The Legislature has passed beyond a consideration for the usual immediate parties in a grade crossing accident to the protection of the traveling public. There is a reason for this change. A new vehicle has come into general use, which has occupied our highways to the exclusion almost of horse-drawn vehicles. Not only are more people exposed to danger because many more now travel on the highways, but because those riding in trains likewise are put in jeopardy by the motor car; an automobile often carries five or six persons rather than one or two, a bus may carry a dozen and a train often carries scores; also there are many more motor cars used than formerly there were horse-drawn vehicles. The motor car is quite distinct from the horse-drawn wagon. It both introduces new dangers and removes some of the old dangers. It tempts to high speed; it inspires impatience and encourages the driver to take chances to beat the train. Because of its weight, its momentum, its inertia, its strong metal construction and its speed, it wrecks trains. On the other hand, when properly driven and maintained in good condition, it is under complete control; it may be stopped or started at will; it will stand without hitching and may be safely left unattended; it will not take fright at a train, however close to its nose. Our old rules must be adjusted to the new condition, or new rules must be made to cover the new needs. Considerations similar to these we conceive induced the Legislature to enact this statute of 1919. The act was intended to accomplish something towards increased safety by establishing new rules of conduct. Having provided for the disc sign and how and by whom it should be placed, the statute in peremptory language provides: " It shall be the duty of the driver of any vehicle using such street or highway and crossing to reduce speed to a safe limit upon passing such sign and to proceed cautiously and carefully with the vehicle under complete control." It had been the custom to place warning signs immediately at the crossing. (See Railroad Law, § 53, as amd. by Laws of 1915, chap. 559.) One not familiar with the crossing or inattentive might not realize, as he

approached a crossing, its existence until he reached it.   Now he is informed of it when 300 feet away, at which point he receives timely warning; he must there reduce his speed to a safe limit. The safe limit is a limit at which, with his attention no longer distracted while controlling and directing his speeding motor car, he may discern the approaching train and stop his car before he is in the danger zone, namely, the track, which with the overhang of the cars means a width of only about nine feet.   The purpose of the limit is to avoid the danger and the danger is from collision with an approaching train, which he might fail to discover.   As was said, in the concurring opinion, upon the former appeal: " Hearing is an unsafe protection; the best sense protection in the light is sight.   The safe limit to speed in approaching a crossing is that speed at which the driver of an automobile, as he arrives at a point where he can see an on-coming train, when it is near enough to render crossing ahead of it dangerous, can stop his car if necessary before he reaches the track.   It is futile to look when one cannot see. If he cannot see without stopping, he must stop."   If he sees a train threatening danger to him, of course he must stop; if he cannot see whether or not he is so threatened, likewise he must stop.   To enforce this, the statute says that from this sign he is " to proceed cautiously and carefully with the vehicle under complete control."   He is to be cautious and careful as he proceeds, not at one particular point, but at all points during the 300 feet.   Cautiously and carefully means with his senses alert and attentive to avoid the danger that exists only at the railroad track.   He has his car under complete control when, proceeding slowly, carefully and cautiously, the driver himself is in position to immediately use the appliances for stopping quickly and is prepared to stop before entering the danger zone.   (*Avery* v. *N. Y., O. & W. R. Co.,* 205 N. Y. 502.)

Accidents at grade crossings have increased to such an alarming extent since the advent of the automobile, that the attention of the public and of the Legislature has been attracted.   If the drivers of automobiles obey the intent of this statute, injuries at railroad crossings will be practically eliminated.   It was the intention of the Legislature by this act that no driver of an automobile should come within the limits of the narrow strip occupied by a passing train at a time when he could collide with it; that he should not go within the danger zone until he could see that he could pass with safety.   It is said, if so strict a rule is laid down by this statute and upheld by the courts, that seldom if ever could a recovery be had for injuries received at a crossing.   It is our view that, if the drivers of automobiles obey this statute in its letter and its intent, seldom if ever will injuries be suffered at a grade

crossing.    The price of safety by obedience to this statute means no more than three or four seconds of time, a small price for a life.    And in any event we believe the Legislature was more interested in preserving life and limb than in preserving the right to recover damages for life and limb lost.    We find support for this construction not only in the statute itself, but in *Raymer* v. *Rutland R. R. Co.* (204 App. Div. 135); *N. Y. C. & H. R. R. R. Co.* v. *Maidment* (168 Fed. Rep. 21); *Brommer* v. *Pennsylvania R. Co.* (179 id. 577); *Pennsylvania R. Co.* v. *Cash* (200 id. 337, 341); *Northern Pacific Ry. Co.* v. *Tripp* (220 id. 286); *Fluckey* v. *Southern Ry. Co.* (242 id. 468, 470).

The deceased was familiar with this crossing.    For a long period of time he had been accustomed to carry passengers in his automobile over it to a near-by resort.    The oral evidence in the case, explained by the photographs and maps, shows beyond dispute, that, if the deceased had obeyed this statute, as he approached this track, he would have seen the train approaching in time to have avoided the collision.    When he, sitting in his car, was eighteen feet from the track he could have seen this train and, when twelve feet from the track, he could have seen beyond the rear of this approaching train.    As he approached this crossing, until about nineteen feet from the tracks, his view toward the west, from which the train was approaching, was practically obscured.    Had he obeyed this statute as he approached the tracks and looked when he could have seen, he would not have been struck.    In *Raymer* v. *Rutland R. R. Co.* (*supra*) we held that plaintiff could not recover because of his contributory negligence; he could not see the approaching train until within sixteen feet of the track and did not look when he could see.    We said: " A man who drives upon a railroad track without having secured an opportunity to look in both directions before he does so, and without having assured himself that he can cross in safety, must be held to have taken all the chances hanging on such conduct even that of divesting himself of a remedy for any injury which might befall him."    The Disc Sign Act was not in that case.

The defendant had maintained gates at this crossing, but kept no watchman to operate the gates on Sundays.    A printed sign at the gate so informed the public and the inference is unavoidable that the deceased was familiar with this custom.    The fact that the gates were open did not excuse the deceased from obedience to this statute, or relieve him of the necessity for vigilance as he approached the track.    (*Avery* v. *N. Y., O. & W. R. Co., supra.*)

We think the deceased did not obey this statute; that he was one of the persons for whose benefit the statute was enacted, and

that his negligence contributed to the accident. Where a duty is imposed a right exists to have it performed. (*Martin* v. *Herzog,* 228 N. Y. 164; *Texas & Pacific R. Co.* v. *Rigsby,* 241 U. S. 33; *Marino* v. *Lehmaier,* 173 N. Y. 530; *Great Northern Ry. Co.* v. *Hooker,* 170 Fed. Rep. 154.)

The judgment should be reversed and the complaint dismissed, with costs.

H. T. KELLOGG, Acting P. J., HINMAN and HASBROUCK, JJ., concur.

Judgment and order reversed on the law and complaint dismissed, with costs in this court and the court below.