JOSEPHINE FLEAHMAN, as Executrix, etc., of EMMA W. PERRY VALENTINE, Deceased, Respondent, *v.* SCHENECTADY RAILWAY COMPANY and Another, Appellants.

Third Department, November 15, 1923.

Railroads — action to recover for death of plaintiff's testatrix who was killed when motor truck in which she was riding collided with trolley car — error to apply disc sign law (Railroad Law, § 53-a) to driver of motor truck where disc sign was less than 300 feet from crossing — damages — testatrix left self-supporting son, and daughter who was in school — verdict against railway company for $10,000 is excessive.

In an action to recover damages for the death of the plaintiff's testatrix who was killed when a motor truck in which she was riding collided with a trolley car at a highway crossing, it was error as to the defendant who was the driver of the motor truck to apply the disc sign law (Railroad Law, § 53-a), since it appears that the disc sign was less than 300 feet from the railroad crossing, and that there was nothing about the crossing in question which would justify the Public Service Commission in determining that the sign might be placed at a less distance than 300 feet. Since the sign was improperly placed, the responsibility which the statute puts upon the driver of a vehicle did not attach to the driver in this case.

The verdict against the railway company for $10,000 was excessive and should be reduced to $7,000 since it appears that the deceased who was forty-nine years of age and was earning from $12 to $14 a week as a factory inspector left surviving an eighteen-year-old son who was self-supporting and a daughter sixteen years of age who was attending school.

VAN KIRK, J., dissents in part.

APPEAL by the defendants, Schenectady Railway Company and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Rensselaer on the 26th day of October, 1922, upon the verdict of a jury for $10,000, and also from an order entered in said clerk's office on the same day denying the defendants' motion for a new trial made upon the minutes.

*Naylon, Robinson, Maynard & Bates [John T. Norton* of counsel], for the appellant Schenectady Railway Company.

*Edward J. Halter*, for the appellant Moch.

*Leary & Fullerton [Walter A. Fullerton* of counsel], for the respondent.

COCHRANE, P. J.:

On July 4, 1922, thirty-one residents of the city of Rensselaer hired of the defendant Moch an automobile truck to transport them on an excursion to Saratoga lake and return. The truck

was a commercial truck but it was temporarily provided with seats arranged for the convenience of the passengers on this trip. On the return journey about two miles south of Ballston Spa while crossing the tracks of the Schenectady Railway Company the truck and a car of that company collided as a result of which plaintiff's testatrix received injuries which caused her death. It is unnecessary to discuss in detail the evidence on its merits. On the main issues as to the negligence of the defendants the testimony is very conflicting but we are satisfied that the questions as to the negligence of both defendants as well as the contributory negligence of the deceased were proper questions for the consideration of the jury and with their verdict in the absence of error we would be indisposed to interfere.

After the main charge of the court to the jury the record before us discloses that the following occurred: " Mr. Norton: I ask your Honor to charge the jury that it was the duty of the driver of the truck which came into collision with the trolley car to reduce the speed of the truck to a safe limit upon passing the disc sign with the two R's upon it, located north of the crossing, which he testified that he saw, as he reached or passed it, and thereafter to proceed cautiously and carefully with the said truck under complete control. The Court: I so charge, and I modify what I said on the subject of his care so as to conform to what Mr. Norton has just asked me to charge. Mr. Henderson: Exception. Mr. Norton: I ask your Honor to charge the jury that the speed limit to speed of the truck in question in approaching the crossing in question was that speed at which the driver of the truck, as he arrived at a point where he could see an oncoming train when it was near enough to render crossing ahead of it dangerous, to stop his car, if necessary, before he reached the track. The Court: I so charge. Mr. Henderson: I except. Mr. Leary: Exception. Mr. Norton: I ask your Honor to charge the jury that if the driver of the truck in question could not see the trolley car in question as he approached the crossing without stopping his truck, it was his duty to stop the truck and look for the trolley car. The Court: I so charge. Mr. Henderson: I except. Mr. Leary: Exception. The Court: Of course it is for the jury to say whether any such condition did obtain at this place. Mr. Norton: That is what he testified was the condition, that he looked. The Court: Then they may remember that part of it. Mr. Norton: I ask your Honor to charge the jury that it was the duty of the driver of the truck in question, approaching the crossing in question, within upwards of two hundred feet of said crossing, to exercise more than ordinary care to discover whether or not a trolley car was

approaching the crossing from either side, and that the exercise of ordinary care within said distance of the crossing, after passing the sign with the two R's upon it, to discover the approach of such trolley car was not sufficient. The Court: Yes, I so charge. It may in the future become what we now know as ordinary care, but now the courts have just held that in view of the great danger that has arisen to the public by driving automobiles, that the driver of an automobile is forced to exercise more than the ordinary care that we used to exercise. Mr. Henderson: We except."

The foregoing requests to charge were manifestly inspired by what this court said in the case of *Horton* v. *New York Central Railroad Co.* (205 App. Div. 763) concerning the duty of drivers of automobiles when approaching railroad grade crossings. What was there said, however, concerning the application of section 53-a of the Railroad Law (as added by Laws of 1919, chap. 438), commonly known as the "Disc Sign Law," presupposed a compliance with that statute in respect to the location of the disc sign. According to that statute it should have been "not less than three hundred feet" from this grade crossing. In reality it was 230 feet. The strict requirements of the statute in respect to the drivers of automobiles as explained by this court in the case cited call for an equally strict requirement in respect to the location of the sign. The one requirement supplements the other. The sign must be properly located before the statutory responsibility of the driver of an automobile comes into existence. It is true that said section 53-a provides that "the exact location of any such sign shall be determined by the Public Service Commission for the district in which such railroad crossing is situated," but that clearly means that such "exact location" must be "not less than three hundred feet" from the crossing, otherwise the statute is inharmonious and inconsistent. An exception exists "where physical conditions at any grade crossing are such that the Commission * * * deems it impracticable to place such approach warning signs at a distance of three hundred feet or more from such crossing," in which case the Commission "may determine another suitable location" or make other provision in respect to such signs. But in this case it clearly appears that the "physical conditions" are not such as to bring this provision of the statute into operation. This sign could without any difficulty have been placed 300 feet or more from the crossing. Such crossing was in the open country with no building or other obstruction to interfere with the location of the sign at the required distance of 300 feet or more in such a manner as to make it perfectly effective within the contemplation of the statute. The Commission could not properly

have fixed the distance at less than 300 feet. As it clearly appears, therefore, that the sign was improperly located the responsibility which the statute places on the driver of a vehicle did not attach to the driver in this instance. We think for the reasons stated the learned trial justice fell into an error in applying to this case section 53-a of the Railroad Law. Such error was highly prejudicial to the defendant Moch. It was almost equivalent in this case to a direction to the jury to find him negligent. As to him the error is such as to require a new trial.

We think also the verdict of $10,000 was excessive. The deceased left a son eighteen years of age who was self-supporting and a daughter sixteen years of age who was attending school. The deceased herself was in the receipt of from $12 to $14 a week as a factory inspector. She was forty-nine years of age and maintained a home of which apparently her children were the beneficiaries. We realize the difficulty of being exact in estimating damages in a case of this kind but we think the verdict is larger than is usually rendered under similar circumstances and that if it is allowed to stand against the defendant railway company it should be reduced to $7,000.

As to the appellant Schenectady Railway Company the judgment and order should be reversed and a new trial granted, with costs to said appellant to abide the event unless the plaintiff stipulates to reduce such verdict to $7,000, in which case the judgment should be modified accordingly and as so modified the judgment and order should be affirmed, without costs. As to the defendant Moch the judgment and order should be reversed and a new trial granted, with costs to said appellant Moch to abide the event.

HINMAN, HASBROUCK and McCANN, JJ., concur; VAN KIRK, J., dissents as to the defendant Moch.

As to the appellant Schenectady Railway Company judgment and order reversed on the ground that the verdict is excessive, and new trial granted, with costs to said appellant to abide the event, unless the plaintiff stipulates to reduce such verdict to $7,000, in which case the judgment should be modified accordingly and as so modified judgment and order unanimously affirmed, without costs. As to the defendant Moch judgment and order reversed on the law and new trial granted, with costs to the appellant to abide the event.