Hill, P. J.
Plaintiff-respondent has recovered a verdict against defendant-appellant Albany Port District, manager and operator of the Port facilities of the Port of Albany, and defendant-appellant Albany Port District Commission, owner and operator of a system of railroad tracks, switches and sidings used in the operation of the Port facilities.
Respondent was an employee of Cargill, Inc., a lessee of certain of the facilities of the appellants, including the blower house adjacent to which he received his injuries. It is a building of considerable length in a northerly and southerly direction, containing machinery and motors used inter alia to remove grain from vessels. by suction. On its easterly side, six feet distant, is one of the railroad switches operated by appellant. It extends in a straight line from a point two hundred twenty-seven feet south of the building and farther on to the north. The over-hang of a freight car is thirty-one inches, leaving a space of forty-one inches between the blower *623 house and any freight car that might pass upon the switch. Respondent in the line of duty stepped into this space from the door which is fifty-eight feet from the southerly end of the building, and was injured. His account of the accident is as follows: “Q. What were you going out the door for? A. To get hold of the telephone to call up the master mechanic. Q. Yes, and where was the telephone located? A. Over on the dock. Q. All right, all right. Then as you started out the door what did you do? A. When I started out the door? Q. Yes. A. I put my left foot out, looked north, I started to turn and then don’t ask me what happened. Q. In other words, you put your left foot out and looked north and then you turned in what direction, do you recall? A. I started to turn south. Q. And that is when you were hit? A. I don’t remember the rest of it. Q. Well, you were not rendered unconscious were you? A. No. Q. All right. Well, then you were struck by this car? A. Yes sir.”
The machinery in the blower house was so noisy that a locomotive whistle or bell could not be heard inside. A string of eight cars was being switched in a northerly direction, the engine at the southerly end, and the evidence most favorable to respondent shows a speed of about ten mies an hour, or in the .neighborhood of fifteen feet a second. A crew of four men operated the switching movement. Appellants’ witnesses testify that the brakeman Cramer was riding upon the most northerly car standing upon a step on the northerly and westerly side thereof. He says: “Well, we were proceeding north, there, when we got near the center of the building, and all of a sudden somebody stepped out and the end of the car just hit him and turned him around. * * * I immediately jumped off. I tried to swing my hand, but I had to jump off in order to give a half-way decent signal, so I jumped off and I gave a signal like this to the conductor or the engineer (illustrating).” He was asked, “ How much time elapsed — elapsed, say, from the time this man came out of the door until he was struck? A. Oh, maybe a couple of seconds.” The brakeman says that he was about twenty feet north of respondent when he jumped from the car. The train stopped about one hundred forty feet north of the door where respondent was injured.
Respondent knew that he could not rely upon hearing the whistle or bell on the engine while he was in the blower house and that he would only gain information as to the approach of cars upon the switch by looking. He did look to the north *624 and says that he turned to look to the south when he was struck. It required but an instant of time to look to the north' and then to turn and look south. Dependent upon the testimony which one believes, the car was moving from nine to fifteen feet a second. Thus, when respondent stepped into the forty-one inch area of safety the car must have been not much more than twenty feet southerly from where he stood. Switching operations upon these tracks were continuous. Bespondent, from the long period of his employment was aware of the danger incident to the employment and to crossing the tracks. The nearness of the track to the building in which he was working bespoke vigilance to be exercised by looking, for until he stepped into the forty-one inch area, no reliance could be placed upon a warning by the blowing of the whistle or the ringing of the bell. . Appellants owed respondent the duty of exercising reasonable care. This did not mean that the switches were not to be used. Bespondent was required to exercise the diligence and care which the known danger of the situation presented, and if he failed to exercise the ordinary precaution of looking before moving to a place which he knew to be dangerous, no question remained for the jury to pass upon. (Wadsworth v. Delaware, Lackawana & Western R. R. Co., 296 N. Y. 206; Crough v. New York Central R. R. Co., 260 N. Y. 227; Schrader v. New York, Chicago & St. Louis R. R. Co., 254 N. Y. 148; Castle v. Director-General of Railroads, 232 N. Y. 430; Avery v. New York, Ontario & Western Ry., 205 N. Y. 502.) It does not appear that anything out of the ordinary happened to divert his attention.
The evidence might sustain a finding of negligence on the part of the appellant in not having a man walk ahead of the moving car, but respondent knew that this was not the custom of the yard, and was required to exercise care commensurate with such omission. This he did not do. He was guilty of contributory negligence as matter of law.
The judgment should be reversed on the law and facts, without costs and the complaint dismissed, without costs.